STATE OF CONNECTICUT *v.* MARTHA C. MILLER, EXECUTRIX (ESTATE OF BENJAMIN F. MILLER, SR.) ET AL.
(11150)

PETERS, HEALEY, PARSKEY, SHEA and GRILLO, Js.

Argued December 7, 1983—decision released April 3, 1984

*John R. Williams,* with whom, on the brief, was *Lucy Cardwell,* law student intern, for the appellant-appellee (defendant).

*Edward F. Reynolds, Jr.,* assistant attorney general, with whom, on the brief, was *Joseph I. Lieberman,* attorney general, for the appellee-appellant (plaintiff).

SHEA, J. The state brought this action to recover expenses for the care of Benjamin F. Miller, Jr., at Whiting Forensic Institute, a state institution for the care of mentally ill persons, where he had been confined since January 31, 1973. His commitment to Whiting resulted from his acquittal of a murder charge by reason of insanity and from orders, pursuant to General Statutes § 53a-47, that he remain there until he was no longer "mentally ill to the extent that his release would constitute a danger to himself or others."

The first count of the complaint claims damages against the defendant Martha C. Miller as executrix

of the estate of her deceased husband, Benjamin F. Miller, Sr., who as the representative payee had until his death received the social security benefits due his son, Benjamin F. Miller, Jr., since the date of confinement. After her husband's death the defendant was appointed representative payee for her son's social security benefits. The second count seeks recovery from her in her individual capacity of the expenses of her son's confinement which have accrued since her appointment. The court, *Covello, J.,* sustained the defendant's demurrer as to the first count but overruled it in respect to the second count. A judgment was rendered, *Lexton, J.,* for the plaintiff on the second count for the cost of confinement at Whiting since the date of the defendant's appointment as representative payee for her son. The defendant has appealed from that judgment and the state has cross appealed with respect to the disposition of the first count.

The issues presented by the defendant's appeal are (1) whether the view expressed in the memorandum ruling upon the demurrer, *Covello, J.,* that any recovery upon the second count would be limited to a current support order, constituted the law of the case and controlled the disposition of the second count; (2) whether 42 U.S.C. § 407, as construed in *Philpott* v. *Essex County Welfare Board,* 409 U.S. 413, 93 S. Ct. 590, 34 L. Ed. 2d 608 (1973), prohibits the state from collecting its charges for the care and treatment of a patient at a state mental hospital from the representative payee of the patient's social security benefits; and (3) whether General Statutes §§ 17-317 and 53a-47 (g), which the state relies upon as authority for the imposition of confinement expenses upon persons committed to a state mental hospital after an acquittal by reason of insanity, are unconstitutional because they violate federal and state constitutional guarantees of equal protection of the laws. The issue of the effect of 42 U.S.C. § 407 is

also raised in the cross appeal. We reach only the issue of equal protection, which is dispositive of both the appeal and cross appeal. In that respect we conclude that this case is not significantly distinguishable from our recent decision in *State* v. *Reed,* 192 Conn. 520, 532, 473 A.2d 775 (1984), where we held that §§ 17-317 and 53a-47 (g) violate the right of an insanity acquittee like Benjamin F. Miller, Jr., to equal protection of the laws. Accordingly, we find error and remand with direction to render judgment for the defendant. We have no occasion to discuss the other issues.

It is clear that the equal protection issue was first raised on appeal. The defendant does not claim to have brought it to the attention of the trial court. "Only in most exceptional circumstances can and will this court consider a claim, constitutional or otherwise, that has not been raised and decided in the trial court." *State* v. *Evans,* 165 Conn. 61, 69, 327 A.2d 576 (1973). The exceptional circumstance present here is, of course, our decision in *State* v. *Reed,* supra, which has just been announced. We have recognized that "where a new constitutional right not readily foreseeable has arisen between the time of trial and appeal" a newly raised claim asserting such a right should be considered on appeal. *State* v. *Evans,* supra, 70. The defendant's claim qualifies under this exception. She was not bound to foresee the advent of the "new constitutional right" resulting from an application of the equal protection clause in *State* v. *Reed,* supra, to invalidate statutes never previously challenged. The circumstance that the constitutional right involved here arose after the taking of the appeal rather than "between the time of trial and appeal" does not make the exception unavailable. Furthermore, "[w]hile we are not bound to consider a matter . . . unless it is properly raised as required by Practice Book § [3063], we have on occasion considered a question not so raised, not by reason of the

appellant's right to have it determined but because, in our opinion, in the interest of the public welfare or of justice between the parties it ought to be done." *Kavanewsky* v. *Zoning Board of Appeals,* 160 Conn. 397, 401, 279 A.2d 567 (1971). It would be unjust to permit the state to recover under the authority of statutes which we have previously held to be constitutionally invalid and to require this defendant to pay hospitalization costs for which no other insanity acquittee may be liable under present statutes.

Having concluded that the defendant's equal protection claim should be decided on its merits, we must decide whether this case can be distinguished from *State* v. *Reed,* supra. The period for which the state seeks reimbursement here extends from February 1, 1973, following Benjamin F. Miller, Jr.'s commitment upon his acquittal because of insanity, until September 28, 1981, the trial date of this case. In *Reed* the period of confinement pursuant to § 53a-47 was November 1, 1974, to June 15, 1976, and our determination that the statutes, §§ 17-317 and 53a-47 (g), imposing liability for hospital costs on insanity acquittees held under an order of confinement violated the equal protection clause was based upon the statutory provisions in existence during that period.

It appears that the statutes declared unconstitutional in *Reed,* §§ 17-317 and 53a-47 (g), have remained substantially unchanged since long before 1973.[1] We also find that no amendments of other subsections of § 53a-47 relevant to the issues of this case have been enacted during the period involved.[2]

---

[1] General Statutes § 17-317 was last amended in 1958. Public Acts 1958, No. 27, § 6. General Statutes § 53a-47 (g) was redesignated § 53a-47 (h) in 1981. Public Acts 1981, No. 81-301, § 2.

[2] In 1975, within the period involved in *Reed,* General Statutes § 53a-47 was amended by adding subsection (i), presently subsection (j), which required the court to determine whether an insanity acquittee should be confined under conditions of maximum security and, if so, prohibited his

General Statutes § 17-178, the statutory basis for civil commitments which in *Reed* was deemed to establish grounds for confinement and release significantly different from those applicable to persons committed pursuant to § 53a-47, however, has undergone significant changes. The criterion discussed in *Reed,* "mentally ill and a fit subject for confinement in a hospital for mental illness," was modified effectively in 1977 to require that a person be "mentally ill and dangerous to himself or herself or others or gravely disabled." Public Acts 1976, No. 76-227, § 3.[3] The "clear and convincing evidence" standard of proof was also made applicable to civil commitments. Id. The provision of General Statutes § 17-192 referred to in *Reed,* which allowed the authorities at a state mental institution to discharge a person who had been civilly committed if they had "reason to believe" that he was "not mentally ill or a suitable subject to be confined in such institution," has been retained.[4]

The adoption effective in 1977 of a new test for civil commitment, "mentally ill and dangerous to himself or herself or others or gravely disabled," leaves no

confinement in a mental hospital not equipped with adequate security facilities. Public Acts 1975, No. 75-476, § 5. The record does not indicate that such a determination or order was made in either *Reed* or in this case, both commitments having occurred prior to this amendment. In 1978 some further amendments of § 53a-47 were enacted to correspond with the court unification act adopted that year by eliminating the references to counties. Public Acts 1978, No. 78-280, §§ 1, 2, 115. The amendment in 1981, which substituted a finding of "guilty but not criminally responsible" for "acquitted" on the grounds of mental disease or defect and modified other provisions of § 53a-47, did not take effect until October 1, 1981, after the terminal date of the period for which reimbursement was claimed in the trial court. Public Acts 1981, No. 81-301, § 2.

[3] The 1976 amendments did not become effective until October 1, 1977. Public Acts 1977, No. 77-4; see Public Acts 1976, No. 76-227, § 7.

[4] General Statutes § 17-192 has been amended to expand the opportunity of a person civilly committed to seek his release in the Probate Court by providing for notice of certain rights and, for indigents, appointed counsel and court expenses. Public Acts 1979, No. 79-515, § 5.

basis, except the "gravely disabled" alternative, for distinguishing between the criteria for civil commitments under § 17-178 and criminal commitments under § 53a-47. The contemporaneous amendment making the "clear and convincing evidence" standard of proof govern civil commitment proceedings, however, has created a significant distinction in the application of those criteria. For commitment of a criminal defendant pursuant to § 53a-47, or in subsequent proceedings related to his continued confinement, the state's burden is to prove dangerousness only by a "preponderance of the evidence," a significantly lower standard than "clear and convincing evidence." *Santosky* v. *Kramer,* 455 U.S. 745, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982); *Addington* v. *Texas,* 441 U.S. 418, 423–25, 99 S. Ct. 1804, 60 L. Ed. 2d 323 (1979).

The use of a less demanding measure of the quantum of evidence required for confinement under § 53a-47 has been constitutionally justified because of the unique status of persons acquitted by reason of insanity. "The obvious difference between insanity acquittees and other persons facing commitment is the fact that the former have been found, beyond a reasonable doubt, to have committed a criminal act." *Warren* v. *Harvey,* 632 F.2d 925, 931 (2d Cir. 1980); *State* v. *Warren,* 169 Conn. 207, 215, 363 A.2d 91 (1975). "While the acquittee therefore may be deprived erroneously of his liberty in the *commitment* process, the liberty he loses is likely to be liberty which society mistakenly had permitted him to retain in the criminal process." *Warren* v. *Harvey,* supra, 931; *United States* v. *Brown,* 478 F.2d 606, 610 (D.C. Cir. 1973); see *Lynch* v. *Overholser,* 369 U.S. 705, 715, 82 S. Ct. 1063, 8 L. Ed. 2d 211 (1962).

Our present concern is not with the justification for the difference in standards related to depriving insanity acquittees of their liberty as compared to persons civilly committed, but with the significance of this difference

in relation to liability for hospitalization costs. This difference in applicable standards of proof is as meaningful as the difference in commitment criteria which we relied upon in *Reed* in supporting our conclusion that insanity acquittees, not being in the same position as those civilly committed in regard to confinement and release, could not constitutionally be included in the civil commitment classification for the purpose of collecting treatment costs. Neither the substantial amendments to § 17-178 nor the minor modifications of § 53a-47 which became effective after the period considered in *Reed* and up to the trial date of this case have materially narrowed the wide gap which exists between the subjects of criminal and civil proceedings in regard to commitment and release. We conclude, therefore, that the result we reached in *Reed,* invalidating §§ 17-317 and 53a-47 (g) as violative of the equal protection clauses of our state and federal constitutions, is equally applicable to the case before us and that the state cannot collect from the defendant the expense of his care at Whiting.

There is no error on the cross appeal; there is error on the appeal, the judgment is set aside and the case is remanded to the trial court with direction to render judgment for the defendant.

In this opinion the other judges concurred.