STATE OF CONNECTICUT *v.* THOMAS METZ
(14909)

PETERS, C. J., BORDEN, BERDON, NORCOTT and KATZ, Js.

Argued May 11—decision released August 2, 1994

*Monte P. Radler,* assistant public defender, for the appellant (defendant).

*Mitchell S. Brody,* assistant state's attorney, with whom, on the brief, were *Eugene Callahan,* state's attorney, and *Steven Weiss,* supervisory assistant state's attorney, for the appellee (state).

*William B. Wynne* filed a brief for the Connecticut Legal Rights Project, Inc., as amicus curiae.

PETERS, C. J. The principal issue in this appeal is the proper allocation of the burden of proof to determine the continued commitment to a mental hospital of a person previously found not guilty of criminal charges by reason of mental disease or defect. The defendant, Thomas Metz, was originally charged with assault of a victim over the age of sixty in the second degree in violation of General Statutes § 53a-60b, a class D felony, and with interfering with a police officer in violation of General Statutes § 53a-167a, a class A misdemeanor. The trial court, *Buzaid, J.,* found the defendant not guilty by reason of mental disease or defect and committed him to the custody of the commissioner of mental health, pursuant to General Statutes § 17a-582 (e) (1),[1] for the maximum allowable period of six years.

---

[1] General Statutes § 17a-582 (formerly § 17-257c) provides: "CONFINEMENT OF ACQUITTEE FOR EXAMINATION. COURT ORDER OF COMMITMENT TO BOARD OR DISCHARGE. (a) When any person charged with an offense is found not guilty by reason of mental disease or defect pursuant to section 53a-13, the court shall order such acquittee committed to the custody of the commissioner of mental health who shall cause such acquittee to be confined, pending an order of the court pursuant to subsection (e) of this section, in any of the state hospitals for mental illness or to the custody of the commissioner of mental retardation, for an examination to determine his mental condition.

"(b) Within forty-five days of the order of commitment pursuant to subsection (a) of this section, the superintendent of such hospital or the commissioner of mental retardation shall cause the acquittee to be examined and file a report of the examination with the court, and shall send a copy thereof to the state's attorney and counsel for the acquittee, setting forth the superintendent's or said commissioner's findings and conclusions as to whether the acquittee is a person who should be discharged.

"(c) Within ten days of receipt of such superintendent's or said commissioner's report, either the state's attorney or counsel for the acquittee may file notice of intent to perform a separate examination of the acquittee. An examination conducted on behalf of the acquittee may be performed by a psychiatrist or psychologist chosen by the acquittee and shall be performed at the acquittee's expense unless he is indigent. If the acquittee

## Sixty-eight days prior to the expiration of the maximum period of commitment, the state petitioned for its

is indigent, the court shall provide him with the services of a psychiatrist or psychologist to perform the examination at the expense of the state. The superintendent or said commissioner who conducted the initial examination shall, within five days of a request of any party conducting a separate examination pursuant to this subsection, release to such party all records and reports compiled in the initial examination of the acquittee. Any separate examination report shall be filed with the court within thirty days of the filing with the court of the initial examination report by the superintendent or said commissioner.

"(d) The court shall commence a hearing within fifteen days of its receipt of any separate examination report or if no notice of intent to perform a separate examination has been filed under subsection (c) of this section, within twenty-five days of the filing of such initial examination report.

"(e) At the hearing, the court shall make a finding as to the mental condition of the acquittee and, considering that its primary concern is the protection of society, make one of the following orders:

"(1) If the court finds that the acquittee is a person who should be confined or conditionally released, the court shall order the acquittee committed to the jurisdiction of the board and either confined in a hospital for mental illness or placed with the commissioner of mental retardation, for custody, care and treatment pending a hearing before the board pursuant to section 17a-583; provided (A) the court shall fix a maximum term of commitment, not to exceed the maximum sentence that could have been imposed if the acquittee had been convicted of the offense, and (B) if there is reason to believe that the acquittee is a person who should be conditionally released, the court shall include in the order a recommendation to the board that the acquittee be considered for conditional release pursuant to subdivision (2) of section 17a-584; or

"(2) If the court finds that the acquittee is a person who should be discharged, the court shall order the acquittee discharged from custody.

"(f) At the hearing before the court, the acquittee shall have the burden of proving by a preponderance of the evidence that he is a person who should be discharged.

"(g) An order of the court pursuant to subsection (e) of this section may be appealed by the acquittee or the state's attorney to the appellate court. The court shall so notify the acquittee.

"(h) During any term of commitment to the board, the acquittee shall remain under the jurisdiction of the board until discharged by the court pursuant to section 17a-593. Except as provided in subsection (c) of said section, the acquittee shall be immediately discharged at the expiration of the maximum term of commitment.

"(i) On committing an acquittee to the jurisdiction of the board, the court shall advise the acquittee of the right to a hearing before the board in accordance with section 17a-583."

extension, pursuant to General Statutes § 17a-593 (c),[2] on the ground that the defendant continued to be men-

[2] General Statutes § 17a-593 (formerly § 17-257n) provides: "COURT ORDER TO DISCHARGE ACQUITTEE FROM CUSTODY. (a) The board, pursuant to section 17a-584 or 17a-592, may recommend to the court the discharge of the acquittee from custody or the acquittee may apply directly to the court for discharge from custody. The court shall send copies of the recommendation or application to the state's attorney and to counsel for the acquittee. An acquittee may apply for discharge not more than once every six months and no sooner than six months after the initial board hearing held pursuant to section 17a-583.

"(b) The recommendation or application shall contain the dates on which any prior recommendations or applications for discharge had been filed with the court, the dates on which decisions thereon were rendered, and a statement of facts, including any change in circumstances since the determination on the most recent recommendation or application, sufficient to qualify the acquittee as a person who should be discharged. A recommendation by the board shall contain findings and conclusions to support the recommendation.

"(c) If reasonable cause exists to believe that the acquittee remains mentally ill or mentally retarded to the extent that his discharge at the expiration of his maximum term of commitment would constitute a danger to himself or others, the state's attorney, at least one hundred thirty-five days prior to such expiration, may petition the court for an order of continued commitment of the acquittee.

"(d) The court shall forward any application for discharge received from the acquittee and any petition for continued commitment of the acquittee to the board. The board shall, within ninety days of its receipt of the application or petition, file a report with the court, and send a copy thereof to the state's attorney and counsel for the acquittee, setting forth its findings and conclusions as to whether the acquittee is a person who should be discharged. The board may hold a hearing or take other action appropriate to assist it in preparing its report.

"(e) Within ten days of receipt of a recommendation for discharge filed by the board under subsection (a) of this section or receipt of the board's report filed under subsection (d) of this section, either the state's attorney or counsel for the acquittee may file notice of intent to perform a separate examination of the acquittee. An examination conducted on behalf of the acquittee may be performed by a psychiatrist or psychologist of the acquittee's own choice and shall be performed at the expense of the acquittee unless he is indigent. If the acquittee is indigent, the court shall provide him with the services of a psychiatrist or psychologist to perform the examination at the expense of the state. Any such separate examination report shall be filed with the court within thirty days of the notice of intent to perform the examination. To facilitate examinations of the acquittee, the

tally ill and a danger to himself or others. The trial court, *Bingham, J.*, denied the defendant's motions to dismiss the state's petition and accepted the recommendation of the psychiatric security review board for the defendant's continued commitment at the Whiting Forensic Institute. The defendant appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c). We reverse the judgment of the trial court.

The validity of the defendant's initial confinement to a mental hospital is unchallenged. That confinement arose in the following procedural and factual circumstances. Because the defendant was found not guilty by reason of mental disease or defect pursuant to General Statutes § 53a-13 in the underlying criminal proceedings, he is an "acquittee" as that term is defined by General Statutes § 17a-580 (1).[3] Although the Probate Court ordinarily has jurisdiction over the commit-

court may order him placed in the temporary custody of any hospital for mental illness or other suitable facility or placed with the commissioner of mental retardation.

"(f) After receipt of the board's report and any separate examination reports, the court shall promptly commence a hearing on the recommendation or application for discharge or petition for continued commitment. At the hearing, the acquittee shall have the burden of proving by a preponderance of the evidence that the acquittee is a person who should be discharged.

"(g) The court shall make a finding as to the mental condition of the acquittee and, considering that its primary concern is the protection of society, make one of the following orders: (1) If the court finds that the acquittee is not a person who should be discharged, the court shall order the recommendation or application for discharge be dismissed; or (2) if the court finds that the acquittee is a person who should be discharged, the court shall order the acquittee discharged from custody. The court shall send a copy of such finding and order to the board."

[3] General Statutes § 17a-580 (formerly § 17-257a) provides in relevant part: "DEFINITIONS. As used in sections 17a-581 to 17a-602, inclusive, and this section:

"(1) 'Acquittee' means any person found not guilty by reason of mental disease or defect pursuant to section 53a-13 . . . ."

ment to a mental hospital of a person with a mental illness who is dangerous to himself or others; General Statutes §§ 17a-497 and 17a-498; in the case of acquittees, the Superior Court has the authority to decide the propriety of such a confinement. General Statutes § 17a-582 (e). In deciding whether to order the commitment, the conditional discharge or the discharge of an acquittee, the governing statute enjoins the Superior Court "that its primary concern is the protection of society." General Statutes § 17a-582 (e). The Superior Court's order of confinement is, however, limited to "a maximum term of commitment, not to exceed the maximum sentence that could have been imposed if the acquittee had been convicted of the offense." General Statutes § 17a-582 (e) (1) (A). In this case, the defendant was ordered to be confined in a state mental hospital for a maximum term of six years.

To contest the appropriateness of his confinement during this six year maximum term, the defendant would have had to establish, "by a preponderance of the evidence that he is a person who should be discharged." General Statutes § 17a-582 (f).[4] Throughout his six year maximum term, after the periodic reviews mandated by General Statutes § 17a-585,[5] the psychiatric security review board has concurred in the professional opinion of the defendant's treating psychiatrist that the defendant continues to be mentally ill and a danger to himself and others.

---

[4] These procedures differ substantially from those that govern the confinement in mental hospitals of other persons suffering from a mental illness. Civil commitments generally not only are administered by the Probate Court but require the person proposing such confinement to establish its propriety by clear and convincing evidence. General Statutes § 17a-498 (c). Civil commitment procedures also apply to any person who, while in the custody of the commissioner of correction, manifests mental illness and dangerousness to himself and others. General Statutes § 17a-515.

[5] General Statutes § 17a-585 (formerly § 17-257f) provides: "PERIODIC REVIEW BY BOARD. The board shall conduct a hearing and review the status of the acquittee not less than once every two years. At such hearing the board shall make a finding and act pursuant to section 17a-584."

As the end of the six year maximum term of the defendant's commitment approached, the state's attorney petitioned the Superior Court to extend the defendant's commitment for a further period of time on the ground that "reasonable cause exists to believe that the acquittee remains mentally ill . . . to the extent that his discharge at the expiration of his maximum term of commitment would constitute a danger to himself or others . . . ." General Statutes § 17a-593 (c). In the opinion of the psychiatric security review board, to which a referral was made pursuant to § 17a-593 (d), the defendant continues to suffer from mental illness and to be a danger to himself and others.

In the trial court, the defendant moved, on two grounds, to dismiss the state's petition to extend his commitment. As a procedural matter, he argued that the state was not entitled to invoke § 17a-593 (c) because it had not filed its petition at least 135 days prior to the expiration of his commitment, as specified by that subsection. As a constitutional matter, he argued that § 17a-593 is unenforceable to the extent that subsection (f) of that statute[6] requires him, even after the expiration of his maximum criminal sentence, to prove that he has regained his sanity in accordance with the rules governing commitment of acquittees rather than in accordance with the rules governing civil commitments and commitments of prisoners whose term of incarceration has ended.[7] After extensive argu-

---

[6] The defendant also cites General Statutes § 17a-596 (f) for the proposition that an acquittee bears the burden of proof at a court hearing on a petition for a period of continued commitment. Section 17a-596 (f) provides that "[a]t any hearing before the [psychiatric security review] board, the acquittee, or any applicant seeking an order less restrictive than the existing order, shall have the burden of proving by a preponderance of the evidence the existence of conditions warranting a less restrictive order." That statute is inapposite in this appeal, however, as it governs only matters before the psychiatric security review board.

[7] For those who may be mentally ill and dangerous, but are not acquittees, the mental hospital at which the person has been confined for a speci-

ment and reargument, the trial court concluded that the state's petition should be granted and that the defendant should continue to be confined at the Whiting Forensic Institute.[8]

On appeal, the defendant renews the procedural and the constitutional issues that he raised at trial. We disagree with his contention that the state's failure to file a petition within the time constraints of § 17a-593 (c) automatically requires dismissal of the petition. We agree, however, that he has raised serious constitutional issues with regard to the burden of proof. To avoid such constitutional jeopardy, we construe § 17a-593 (c) to require the state to bear the burden of proving the need for a period of continued commitment of an acquittee after the expiration of the maximum term specified by § 17a-582 (e) (1) (A).

I

Section 17a-593 (c) authorizes a state's attorney to seek a court order for the continued commitment of an acquittee "[i]f reasonable cause exists to believe that the acquittee remains mentally ill or mentally retarded to the extent that his discharge at the expiration of his maximum term of commitment would constitute a danger to himself or others . . . ." Although that statute specifies that such a petition be filed "at least one hundred thirty-five days prior to such expiration," the state did not file its petition until sixty-eight days prior

fied period of time may institute proceedings in Probate Court to extend the person's commitment. General Statutes § 17a-508 (further civil commitment in general); General Statutes § 17a-520 (further civil commitment at end of term of imprisonment for criminal conduct). See footnote 4.

[8] Although both the state, in its petition for a continued commitment, and the psychiatric security review board, in its recommendation of a continued commitment, requested that the trial court specify a time period for the defendant's continued confinement, the record indicates that the trial court granted the state's petition without term. The defendant has not challenged the validity of this aspect of the trial court's order.

to the expiration of the defendant's six year maximum term. The defendant maintains that the 135 day time period is mandatory, while the state maintains that it is merely directory. We agree with the trial court that a petition invoking § 17a-593 (c) should not be dismissed on the grounds of untimeliness unless the state's delay has prejudiced the acquittee. In this case, the defendant has not alleged any prejudice attributable to the state's delay in filing the petition.

Well established principles of statutory construction govern our determination of whether a statutory time period is mandatory or directory. Our fundamental objective is to ascertain and give effect to the apparent intent of the legislature. *Ambroise* v. *William Raveis Real Estate, Inc.,* 226 Conn. 757, 764, 628 A.2d 1303 (1993); *Iovieno* v. *Commissioner of Correction,* 222 Conn. 254, 258, 608 A.2d 1174 (1992); *Chairman* v. *Freedom of Information Commission,* 217 Conn. 193, 200, 585 A.2d 96 (1991). "In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter. . . ." (Citations omitted; internal quotation marks omitted.) *Ambroise* v. *William Raveis Real Estate, Inc.,* supra, 764; see *Glastonbury Volunteer Ambulance Assn., Inc.* v. *Freedom of Information Commission,* 227 Conn. 848, 852–57, 633 A.2d 305 (1993).

Applying these rules in the present circumstances, we conclude that the 135 day period specified in § 17a-593 (c) is directory. The defendant seeks a construction of this statute that would require automatic dismissal of a late filed state's petition for the continued commitment of an acquittee. Thus, noncompliance with § 17a-593 (c) would effectively deprive the Superior

Court of further jurisdiction over an acquittee's continuing commitment. As in the case of time limitations on a right to appeal, "the established principle [is] that every presumption is to be indulged in favor of jurisdiction . . . [and] we require a strong showing of a legislative intent to create a time limitation that, in the event of noncompliance, acts as a subject matter jurisdictional bar." (Citations omitted; internal quotation marks omitted.) *Ambroise* v. *William Raveis Real Estate, Inc.,* supra, 226 Conn. 765. We can discern no such showing in either the plain language of the statute or its legislative history.

Significant to our determination is the absence in the statute of words, such as "must" or "shall," which ordinarily express legislative mandates of a nondirectory nature. See *Statewide Grievance Committee* v. *Rozbicki,* 211 Conn. 232, 240, 558 A.2d 986 (1989); *Lo Sacco* v. *Young,* 210 Conn. 503, 507, 555 A.2d 986 (1989); *Caulkins* v. *Petrillo,* 200 Conn. 713, 717, 513 A.2d 43 (1986); *Sullivan* v. *Liberty Mutual Fire Ins. Co.,* 174 Conn. 229, 233, 384 A.2d 384 (1978). This stands in contrast to other subsections of § 17a-593 that employ such definitive terminology. See, e.g., General Statutes § 17a-593 (d). The legislature, if intending the 135 day time limitation to be mandatory, could easily have expressed this intent. See *State* v. *Ortiz,* 217 Conn. 648, 654, 588 A.2d 127 (1991).

The legislative history of § 17a-593 (c) reveals that the 135 day time frame was incorporated into that statute in 1987; Public Acts 1987, No. 87-486, § 9; in order to make the psychiatric security review board "more effective and efficient." Conn. Joint Standing Committee Hearings, Judiciary, Pt. 3, 1987 Sess., p. 1051, written testimony of Robert Berger, chair of psychiatric security review board; see also 30 S. Proc., Pt. 14, 1987 Sess., pp. 4879–80, remarks of Senator Anthony Aval-

lone.[9] "[L]egislative provisions designed to secure order, system and dispatch in proceedings are ordinarily held to be directory where, as here, they are stated in affirmative terms or, to express it differently, are unaccompanied by negative words." (Internal quotation marks omitted.) *State* v. *White,* 169 Conn. 223, 238, 363 A.2d 143, cert. denied, 423 U.S. 1025, 96 S. Ct. 469, 46 L. Ed. 2d 399 (1975); *Caron* v. *Inland Wetlands & Watercourses Commission,* 222 Conn. 269, 280, 610 A.2d 584 (1992). We note that § 17a-593 (c) attaches no penalty for the failure of the state to comply with its provisions, nor does it otherwise require that the state seek an extension of time. See *State* v. *White,* supra, 238; *Caron* v. *Inland Wetlands & Watercourses Commission,* supra, 273–74.

Accordingly, we conclude that the 135 day time limitation of § 17a-593 (c) is directory, rather than mandatory. The trial court therefore correctly decided not to dismiss the state's petition for the continuation of the defendant's commitment.

## II

The trial court granted the state's petition for the continuation of the defendant's initial commitment despite the defendant's claim that the manner of his further commitment violated his federal and state constitutional rights to due process and equal protection

[9] Public Acts 1987, No. 87-486, § 9, advanced the time for filing of a state's petition for continued confinement from ninety to 135 days before the maximum period of commitment; General Statutes § 17a-593 (c); and also extended the period in which the psychiatric security review board is required to file a report with the trial court regarding such a petition from forty-five days to ninety days from the filing of the petition. General Statutes § 17a-593 (d). These changes were motivated by a concern that the psychiatric security review board could not conduct a hearing, and prepare and file a report with the trial court, in the forty-five days after filing of the petition, as was mandated by that statute prior to 1987. Conn. Joint Standing Committee Hearings, Judiciary, Pt. 3, 1987 Sess., pp. 994–95, 1052.

of the laws. Having been confined for the maximum term specified in § 17a-582 (e) (1) (A), the defendant maintains that it is unconstitutional for his further commitment to be ordered without the procedural safeguards afforded to those whose term of incarceration has expired or who, for other reasons, have been civilly committed. The state contends, to the contrary, that the procedural constraints imposed by § 17a-593 are constitutional because the defendant's prior criminal conduct carries with it a continuing presumption that the defendant is a danger to society. We agree with the defendant that he is entitled to greater procedural safeguards than he was afforded in this case.

### A

Our examination of the specific claims made by the defendant must be informed by an understanding of the nature of the constitutional rights that he is asserting. These constitutional rights have been articulated in cases decided by the Supreme Court of the United States and applied in cases decided by this court.

Freedom from unjustified governmental intrusions into personal security and bodily freedom are basic, historically recognized liberty interests that are protected by the federal constitution. *Foucha* v. *Louisiana,* 504 U.S. 71, 80, 112 S. Ct. 1780, 118 L. Ed. 2d 437 (1992); *Vitek* v. *Jones,* 445 U.S. 480, 492, 100 S. Ct. 1254, 63 L. Ed. 2d 552 (1980). As a matter of federal law, " '[i]t is clear that commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection' "; *Foucha* v. *Louisiana,* supra, 80; that is, "the nature of commitment [must] bear some reasonable relation to the purpose for which the individual is committed." Id., 79. The United States Supreme Court has recognized involuntary commitment to a mental institution, in particular, as involving "more than a loss of freedom from confinement";

*Vitek* v. *Jones,* supra, 492; due to its stigmatizing consequences, and the potential exposure to invasive, compulsory medical and psychiatric treatment. Id.

The law of federal due process accordingly imposes significant constitutional constraints on involuntary commitments. Even for the purpose of psychiatric treatment, a state may not confine an individual, unless the individual is both mentally ill and dangerous. *O'Connor* v. *Donaldson,* 422 U.S. 563, 573–76, 95 S. Ct. 2486, 45 L. Ed. 2d 396 (1975). To prevail in civil commitment proceedings, "the Government . . . [must] demonstrate by clear and convincing evidence that the individual is mentally ill and dangerous." *Jones* v. *United States,* 463 U.S. 354, 362, 103 S. Ct. 3043, 77 L. Ed. 2d 694 (1983); *Addington* v. *Texas,* 441 U.S. 418, 426–27, 433, 99 S. Ct. 1804, 60 L. Ed. 2d 323 (1979). Although these procedural protections are directed to persons who are civilly committed, they apply as well, under federal equal protection law, to a state's initiation of involuntary commitment proceedings for certain persons involved in the criminal justice system, such as prisoners after the expiration of their prison term; *McNeil* v. *Director, Patuxent Institution,* 407 U.S. 245, 92 S. Ct. 2083, 32 L. Ed. 2d 719 (1972); *Baxstrom* v. *Herold,* 383 U.S. 107, 86 S. Ct. 760, 15 L. Ed. 2d 620 (1966); and criminal defendants found not competent to stand trial. *Jackson* v. *Indiana,* 406 U.S. 715, 724, 92 S. Ct. 1845, 32 L. Ed. 2d 435 (1972).[10]

---

[10] Involuntary commitment without the full protections of *Addington* v. *Texas,* supra, 441 U.S. 418, and *O'Connor* v. *Donaldson,* supra, 422 U.S. 563, has been approved in narrowly circumscribed situations. See, e.g., *Jackson* v. *Indiana,* supra, 406 U.S. 738 (state's interest in determining whether accused may become competent to stand trial in foreseeable future justifies commitment "for [a] reasonable period of time"); *McNeil* v. *Director, Patuxent Institution,* supra, 407 U.S. 249–50 (implying short-term commitment of convicted criminal for purposes of psychiatric evaluation legitimate); cf. *Vitek* v. *Jones,* supra, 445 U.S. 495–96 (convicted felon serving sentence may not be transferred to mental institution without appropri-

Federal law has, however, recognized that insanity acquittees are "a special class that should be treated differently from other candidates for commitment," so as to warrant a departure from the *Addington* standard. *Jones* v. *United States,* supra, 463 U.S. 370. Thus, "when a criminal defendant establishes by a preponderance of the evidence that he is not guilty of a crime by reason of insanity, the Constitution permits the Government, on the basis of the insanity judgment, to confine him to a mental institution until such time as he has regained his sanity or is no longer a danger to himself or society." Id. For an insanity acquittee, the state may adopt procedures that presume the acquittee's continued dangerousness and that envisage a diminished risk that a person will be committed who is not mentally ill. Id., 364–67.

Applying the principle that the commitment of insanity acquittees may be governed by rules that differ from those governing those who are civilly committed, the United States Supreme Court held, in *Jones* v. *United States,* supra, 463 U.S. 354, that the District of Columbia Code could constitutionally permit an insanity acquittee to be committed for an initially indefinite period of time, as long as his continued commitment was subject to periodic reviews that would afford him an opportunity to prove that he was no longer mentally ill or dangerous. *Jones* expressly did not decide whether the release provisions contained in the District of Columbia Code, which place a similar burden of proof on the insanity acquittee whenever he seeks release, comported with the requirements of due process. Id., 363 n.11.[11] Similarly, the court expressly

ate procedures, including notice and adversarial hearing, to prove mentally ill); see also *Jones* v. *United States,* supra, 463 U.S. 372–73 n.3 (Brennan, J., with whom Marshall and Blackmun, Js., joined, dissenting).

[11] The release provisions of the District of Columbia Code provide an insanity acquittee with "a judicial hearing [within fifty days of commitment] to determine his eligibility for release, at which he has the burden of prov-

did not decide whether considerations of equal protection might be implicated by the District of Columbia Code's disparate release provisions for insanity acquittees and other committed persons.[12] Compare *Humphrey* v. *Cady,* 405 U.S. 504, 92 S. Ct. 1048, 31 L. Ed. 2d 394 (1972) (remand necessary for lower court to review "persuasive" equal protection claim based on disparity of procedural safeguards afforded committee under Wisconsin's Sex Crime Act as compared with other civil committees), with *Heller* v. *Doe,*      U.S.      , 113 S. Ct. 2637, 125 L. Ed. 2d 257 (1993) (rational basis for distinguishing between mentally ill and mentally retarded for purposes of burden of proof at civil commitment proceedings; applicability of heightened review not reached).

Returning to the commitment of insanity acquittees in *Foucha* v. *Louisiana,* supra, 504 U.S. 71, the United States Supreme Court declared unconstitutional a Louisiana statute that permitted the indefinite commitment of an insanity acquittee who was no longer mentally ill, unless he could prove that he was no longer dangerous. *Foucha* not only reaffirmed that a " 'committed acquittee is entitled to release when he

ing by a preponderance of the evidence that he is no longer mentally ill or dangerous.' . . . If he fails to meet this burden at the 50-day hearing, the . . . acquittee subsequently may be released, with court approval, upon certification of his recovery by the hospital chief of service. . . . Alternatively, the acquittee is entitled to a judicial hearing every six months at which he may establish by a preponderance of the evidence that he is entitled to release. . . ." (Citations omitted.) *Jones* v. *United States,* supra, 463 U.S. 357–58.

[12] Under the District of Columbia Code, "the basic standard for release is the same under either civil commitment or commitment following acquittal by reason of insanity: the individual must prove by a preponderance of the evidence that he is no longer dangerous or mentally ill." *Jones* v. *United States,* supra, 463 U.S. 363 n.11. However, "[a] patient who is committed civilly is entitled to unconditional release upon certification of his recovery by the hospital chief of service . . . whereas a committed insanity acquittee may be released upon such certification only with court approval . . . ." (Citations omitted.) Id.

has recovered his sanity or is no longer dangerous' ''; id., 77; but also placed a sane acquittee on an equal footing with a person who has been civilly committed for purposes of establishing the propriety of continued commitment. In both cases, the court held, the state must show '' 'by clear and convincing evidence that the individual is mentally ill and dangerous,' *Jones* [v. *United States,* supra, 463 U.S. 362]." Id., 80.

Neither *Jones* nor *Foucha* squarely addressed the constitutionality of placing on an insanity acquittee the burden of proving sanity in order to obtain release from involuntary commitment.[13] The court's holding in *Foucha,* nonetheless, reiterates that, once the legitimacy of an original confinement has lapsed, the state cannot impose on an acquittee a burden of proof that would "defeat [his] liberty interest under the Constitution in being freed from indefinite confinement in a mental facility." Id., 82.

Like the state laws reviewed in these federal cases, our statutes distinguish between those who are civilly committed and those who are insanity acquittees. We have upheld the validity of such disparities in a number of cases. *State* v. *Miller,* 192 Conn. 532, 538, 472 A.2d 1272 (1984); *State* v. *Reed,* 192 Conn. 520, 529, 532, 473 A.2d 775 (1984). "The use of a less demanding measure of the quantum of evidence" for the initial confinement of acquittees than that afforded civil committees, at least to the extent of permitting the state to bear the burden of proof by a mere preponderance of the evidence, "has been constitutionally

---

[13] In *Foucha,* the acquittee's mental status was not at issue because the head of the mental facility had rendered a decision of "no mental illness" in accordance with the Louisiana statutes, thus affording the acquittee a hearing at which he bore the burden of proving, by clear and convincing evidence, that he was no longer a danger to the community. *Foucha* v. *Louisiana,* supra, 504 U.S. 73. Thus, the state was seeking to perpetuate the acquittee's prior legitimate confinement solely on the basis of his continuing propensity for dangerousness. Id., 78.

justified because of the unique status of persons acquitted by reason of insanity." *State* v. *Miller,* supra, 538; *Warren* v. *Harvey,* 632 F.2d 925, 931 (2d Cir. 1980); *State* v. *Warren,* 169 Conn. 207, 215, 363 A.2d 91 (1975). We have acknowledged that "[t]he obvious difference between insanity acquittees and other persons facing commitment is the fact that the former have been found, beyond a reasonable doubt, to have committed a criminal act." *Warren* v. *Harvey,* supra, 931; *State* v. *Warren,* supra, 215. "While the acquittee therefore may be deprived erroneously of his liberty in the commitment process, the liberty he loses is likely to be liberty which society mistakenly had permitted him to retain in the criminal process." *Warren* v. *Harvey,* supra, 931; see also *Lynch* v. *Overholser,* 369 U.S. 705, 715, 82 S. Ct. 1063, 8 L. Ed. 2d 211 (1962); *United States* v. *Brown,* 478 F.2d 606, 610 (D.C. Cir. 1973).

In contrast to an acquittee's differentiated status at an initial commitment hearing, our state law has, for certain purposes, likened acquittees to prisoners who have been transferred to a mental hospital during the pendency of their jail sentence. We have noted that "both classes of hospital inmates are being deprived of their liberty primarily for the protection of society; both have the same financial resources; and both have the same need for treatment." *State* v. *Reed,* supra, 192 Conn. 530. Thus, this court has held that equal protection of the laws mandates that an acquittee, like a prisoner under our statutes, should not bear the costs of his commitment. Id., 529–30, 532 (striking down General Statutes §§ 17-317 and 53a-47 [h], in relation to § 17-318, on equal protection grounds for disparate treatment of acquittees and prisoners in relation to burden of hospital costs).

With respect to release from confinement, this court has adopted the principle enunciated in *Jones* and reiterated in *Foucha* that, as a matter of due process,

an acquittee is entitled to release when he has recovered his sanity or is no longer dangerous. *Payne* v. *Fairfield Hills Hospital,* 215 Conn. 675, 684, 578 A.2d 1025 (1990); see also *Franklin* v. *Berger,* 211 Conn. 591, 560 A.2d 444 (1989). In dictum, we have construed § 17a-593 (f), as currently codified, as placing on an acquittee the burden of proving his entitlement to a release even after the maximum term of commitment specified in § 17a-582 (e) (1) (A) has expired. *Franklin* v. *Berger,* supra, 603. Until this case, we have not, however, considered the constitutionality of such a construction of § 17a-593 (f), either as a matter of federal constitutional law or by undertaking an independent analysis of the applicable provisions of our state constitution.[14]

In sum, neither federal nor state case law contains dispositive precedents defining the constitutional liberty interest or the rights to equal protection of insanity acquittees who seek release after they have been committed for a period of time measured by their maximum possible criminal confinement. Specifically, there are no guiding precedents about whether it is constitutionally permissible to require an insanity acquittee to continue to be burdened by a presumption of dangerousness and insanity after expiration of a statutorily defined maximum term of commitment.

### B

We consider first the defendant's challenge to the constitutionality of the governing statutes that is premised on the fact that the evidence supporting his recommitment came only from his treating physician

---

[14] Two separate opinions in *Franklin* v. *Berger,* supra, 211 Conn. 591, however, specifically questioned whether an acquittee could constitutionally be required to prove his entitlement to be released once his maximum term of confinement had expired. Id., 606 (*Glass, J.,* concurring); id., 608 n.1 (*Healey, J.,* concurring).

at Whiting. The defendant claims that by not requiring sworn certificates of at least two impartial physicians not affiliated with the hospital to which application for commitment is being made, as is required for civil committees; General Statutes § 17a-498 (c); that the procedures to continue his commitment under General Statutes §§ 17a-596 and 17a-593 violated his rights to equal protection of the laws.

We note, however, that the defendant did not avail himself of the statutory provision permitting him to obtain a separate examination "by a psychiatrist or psychologist of the acquittee's own choice"; General Statutes § 17a-593 (e); in order to challenge the propriety of his continued commitment. " 'We have held that the failure to raise a procedural claim or the failure to utilize a remedy available to cure a procedural defect can constitute a waiver of the right to object to the alleged defect.' " *Dragan* v. *Connecticut Medical Examining Board,* 223 Conn. 618, 633, 613 A.2d 739 (1992); *Jutkowitz* v. *Dept. of Health Services,* 220 Conn. 86, 95–96, 596 A.2d 374 (1991); see also *Levinson* v. *Board of Chiropractic Examiners,* 211 Conn. 508, 536, 560 A.2d 403 (1989); *Henderson* v. *Dept. of Motor Vehicles,* 202 Conn. 453, 461–63, 521 A.2d 1040 (1987). Accordingly, we deem this issue waived and decline to reach its merits.

## C

The defendant's alternate basis for challenging the constitutionality of § 17a-593 concerns the propriety of assigning him the burden of proving that he is no longer insane or dangerous in proceedings brought to renew his commitment after expiration of the maximum term of his initial commitment. The defendant properly raised this issue at trial. We conclude that the

statute must be construed to avoid the constitutional jeopardy that the defendant has brought to our attention.

We start our analysis of § 17a-593 with the premise that "a validly enacted statute carries with it a strong presumption of constitutionality, [and that] those who challenge its constitutionality must sustain the heavy burden of proving its unconstitutionality beyond a reasonable doubt. *State* v. *Breton,* 212 Conn. 258, 269, 562 A.2d 1060 (1989); *University of Connecticut Chapter, AAUP* v. *Governor,* 200 Conn. 386, 391, 512 A.2d 152 (1986); *Eielson* v. *Parker,* 179 Conn. 552, 560, 427 A.2d 814 (1980); *State* v. *Darden,* 171 Conn. 677, 678, 372 A.2d 99 (1976). In construing a statute, moreover, we will search for an effective and constitutional construction that reasonably accords with the legislature's underlying intent. *State* v. *Floyd,* 217 Conn. 73, 79, 584 A.2d 1157 (1991); *McConnell* v. *Beverly Enterprises-Connecticut, Inc.,* 209 Conn. 692, 705–706, 553 A.2d 596 (1989)." *Bartholomew* v. *Schweizer,* 217 Conn. 671, 675–76, 587 A.2d 1014 (1991).

In this case, although § 17a-593 (c) permits a state's attorney to petition the Superior Court to continue the commitment of an acquittee after the expiration of the maximum term of confinement specified in § 17a-582 (e) (1) (A), the statute contains limited directions about the manner in which such further commitment should be adjudicated. Pursuant to § 17a-593 (d) and (e), the court must seek the recommendation of the psychiatric security review board, and the acquittee must be permitted to challenge the validity of that recommendation. Furthermore, under § 17a-593 (f), a court hearing must proceed on any "recommendation or application for discharge or petition for continued commitment." Although subsection (f) expressly requires the *acquittee* to bear the burden of establishing his right to a *discharge* by a preponderance of the

evidence before expiration of the maximum period of commitment, it is unclear whether this subsection was intended to allocate the same burden when the *state* petitions for a period of *additional commitment* beyond that maximum term.[15] A statutory burden to show that an "acquittee is a person who should be discharged" *assumes* the propriety of his commitment. That is the very question at issue in a hearing on a state's petition for an additional period of commitment.

The latent ambiguity inherent in § 17a-593 (c) is only heightened when the subsection is viewed in context. By authorizing the state to petition for an acquittee's continued commitment if reasonable cause exists to support such confinement, § 17a-593 (c) impliedly places a burden on the state to establish the need for continued commitment. Furthermore, the maximum period of commitment authorized by § 17a-582 (e) (1) (A) would be rendered a nullity if an indefinite commitment could be ordered at the state's behest.

Important considerations of policy suggest that the legislature would not have intended to impose, even

---

[15] To the extent that dicta in *Franklin* v. *Berger,* supra, 211 Conn. 603, assumed that General Statutes § 17a-593 (f) allocates the burden of proof to an acquittee in a hearing for his continued commitment, we decline to convert dicta into a holding. We note that *Franklin* addressed neither the constitutionality of § 17a-593 (f); but see footnote 14; nor the relevant legislative history that plainly indicates the subsection was intended to place the burden of proof on an acquittee only with respect to applications for discharge. By so assigning the burden of proof, irrespective of whether the application is brought by the acquittee or by the psychiatric security review board, the 1987 amendments sought to avoid placing the board in the awkward position of representing an acquittee on an application for discharge when the acquittee was already represented by counsel. See Conn. Joint Standing Committee Hearings, Judiciary, Pt. 3, 1987 Sess., p. 1052, written testimony of Robert Berger, chair of psychiatric security review board. Such concerns do not arise in the context of a state's petition for continued commitment. Finally, by declining to follow the *Franklin* dicta construing § 17a-593 (f), we do not call into question our holding in *Franklin* that it is not a denial of equal protection to refuse to credit pretrial jail time against the length of an insanity acquittee's commitment to a mental hospital. *Franklin* v. *Berger,* supra, 604.

on an insanity acquittee, a never-ending burden of rebutting an indefinite presumption of continuing insanity and dangerousness. The considered view of professional commentators who have promulgated model rules for the commitment of insanity acquittees is that, after expiration of a stated term of commitment, fairness, convenience and symmetry require an insanity acquittee to be treated like others committed for mental illness. See ABA Criminal Justice Mental Health Standards (1989) pt. VII, pp. 435–36.[16]

In our view, these principles of fairness are not merely guides for statutory policymakers, but implicate important constitutional principles as well. In our interpretation of § 17a-593, we are guided by the principle that we should seek to construe the statute so as

---

[16] The expressed purpose of the ABA standards "is to balance a legitimate concern for public safety against the need for fair and consistent treatment of . . . acquittees." ABA Criminal Justice Mental Health Standards (1989) pt. VII, p. 399. Like Connecticut, the ABA recommends the setting of a maximum duration of commitment, the outer limit of which is the maximum sentence of imprisonment that an acquittee could have received following conviction. Id., p. 433.

The disparate treatment of acquittees for purposes of their initial commitment has been severely criticized by the ABA: "A finding, at whatever level of certainty, that an acquittee was mentally disabled at the time of an alleged offense reveals little or nothing about mental condition at the time of acquittal. Months or even years may have intervened between the two events. The passage of time and, in many cases, the provision of treatment or habilitation in the interim generate a serious possibility that an acquittee's mental condition will not have remained constant from activity through acquittal. To draw inferences from such stale information may well be seriously unfair if the consequences of the presumption of continuing dangerousness affect something as important as personal liberty." Id., p. 424. Accordingly, the ABA would impose on the state the burden of persuasion, by clear and convincing evidence, concerning an acquittee's current mental status and dangerousness at the initial commitment hearing, and at subsequent periodic reviews. Id., pp. 418, 437. Whatever the merits of such an argument with respect to the initial commitment, we note that the expressed concerns are significantly heightened by the inevitable passage of time and the provision of treatment or habilitation following an initial commitment. See id., p. 442.

not to place it in constitutional jeopardy. *Bartholomew* v. *Schweizer,* supra, 217 Conn. 675–76; *State* v. *Floyd,* supra, 217 Conn. 79; see also *McConnell* v. *Beverly Enterprises-Connecticut, Inc.,* supra, 209 Conn. 705–706. Specifically, we must inquire into whether an indefinite allocation of the burden of proof on an insanity acquittee raises significant questions of equal protection.

" '[T]he concept of equal protection [under both the state and federal constitutions] has been traditionally viewed as requiring the uniform treatment of persons standing in the same relation to the governmental action questioned or challenged.' *Reynolds* v. *Sims,* 377 U.S. 533, [565,] 84 S. Ct. 1362, 12 L. Ed. 2d 506 (1964); *Cleburne* v. *Cleburne Living Center, Inc.,* 473 U.S. 432, [440,] 105 S. Ct. 3249, 87 L. Ed. 2d 313 (1985); *Daily* v. *New Britain Machine Co.,* 200 Conn. 562, 578, 512 A.2d 893 (1986). The 'equal protection clause does not require absolute equality or precisely equal advantages.' *Ross* v. *Moffitt,* 417 U.S. 600, [612,] 94 S. Ct. 2437, 41 L. Ed. 2d 341 (1974); *Daily* v. *New Britain Machine Co.,* supra, 577–78. Rather, a state may make classifications when enacting or carrying out legislation, but in order to satisfy the equal protection clause the classifications made must be based on some reasonable ground. *Ross* v. *Moffitt,* supra [612]; *Magoun* v. *Illinois Trust & Savings Bank,* 170 U.S. 283, [293,] 18 S. Ct. 594, 42 L. Ed. 1037 (1898); *Daily* v. *New Britain Machine Co.,* supra [577–78]; *State* v. *Reed,* [supra, 192 Conn. 531]. To determine whether a particular classification violates the guarantees of equal protection, the court must consider 'the character of the classification; the individual interests affected by the classification; and the governmental interests asserted in support of the classification.' *Dunn* v. *Blumstein,* 405 U.S. 330, 335, 92 S. Ct. 995, 31 L. Ed. 2d 274 (1972)." *Franklin* v. *Berger,* supra, 211 Conn. 594–95. "[T]he legislature

has . . . broad discretion in the exercise of its power to enact legislation and . . . its judgment in establishing statutory classifications will [ordinarily] be set aside only where no grounds can be conceived to justify them. *McDonald* v. *Board of Election,* 394 U.S. 802, 809, 89 S. Ct. 1404, 22 L. Ed. 2d 739 (1969)."[17] *State* v. *Reed,* supra, 531.

Despite the substantial degree of legislative discretion recognized by these precedents, we are of the view that the defendant has raised a serious constitutional concern in this case. After the expiration of a maximum term of confinement, it is difficult to find a constitutional justification for a categorical distinction between an insanity acquittee and an incarcerated prisoner who was transferred to a mental hospital while he was serving his criminal sentence. In each instance, the purpose of commitment "is to treat the individual's mental illness and protect him and society from his potential dangerousness"; *Jones* v. *United States,* supra, 463 U.S. 368; *Payne* v. *Fairfield Hills Hospital,* supra, 215 Conn. 684; see also *Franklin* v. *Berger,* supra, 211 Conn. 612 (*Healey, J.,* concurring). In each

[17] We note that "[w]here the [statutory] classification impinges upon a fundamental right or impacts upon an 'inherently suspect' group, it will be subjected to strict scrutiny and will be set aside unless it is justified by a compelling state interest. [*Dunn* v. *Blumstein,* supra, 405 U.S. 342]; *Bruno* v. *Civil Service Commission,* 192 Conn. 335, 345, 472 A.2d 328 (1984); *Laden* v. *Warden,* 169 Conn. 540, 542, 363 A.2d 1063 (1975). On the other hand, where the classification at issue neither impinges upon a fundamental right nor affects a suspect group 'it will withstand constitutional attack if the distinction is founded on a rational basis.' *Laden* v. *Warden,* supra, 543; see also *McGinnis* v. *Royster,* 410 U.S. 263, 270, 93 S. Ct. 1055, 35 L. Ed. 2d 282 (1972); *Dandridge* v. *Williams,* 397 U.S. 471, 485, 90 S. Ct. 1153, 25 L. Ed. 2d 491 (1970)." *Franklin* v. *Berger,* supra, 211 Conn. 595. Because we construe General Statutes § 17a-593 (c) to negate the disparate treatment of acquittees from other civil committees with respect to the allocation of the burden of persuasion at a hearing for a period of continued commitment, we need not decide whether heightened review would be appropriate in a constitutional analysis of the disparate treatment of acquittees and civil committees in another context.

instance, furthermore, the qualitative character of the liberty deprivation is the same, irrespective of the fact that the Superior Court rather than the Probate Court retains jurisdiction over the propriety of an acquittee's continued commitment. General Statutes §§ 17a-582 (e), 17a-497 and 17a-498.

These constitutional concerns lead us to construe the maximum period of commitment authorized by § 17a-582 (e) (1) (A) as a reasonably identified point of demarcation beyond which the presumption of dangerousness initially accompanying an acquittee does not continue.[18] Accordingly, we conclude that § 17a-593 (c) impliedly imposes the same burden on the state at a hearing for the continued commitment of an acquittee beyond his current definite period of commitment as is imposed in a civil commitment hearing under § 17a-498 (c); namely, to show by clear and convincing evidence that the acquittee is currently mentally ill and dangerous to himself or herself or others or gravely disabled.

Our conclusion finds additional support in the equal protection clause of our state constitution, which forbids discrimination on the ground of mental illness. If the defendant were not suffering from mental illness, the state could not constitutionally confine him beyond the maximum term of his criminal convictions. Although the state may well have a compelling interest in the continued commitment of acquittees whose mental illness makes them dangerous to themselves or others; cf. *Daly* v. *DelPonte,* 225 Conn. 499, 511–18, 624 A.2d 876 (1993); that interest arises only when the state has shouldered the burden of establishing the existence of the underlying facts. Id., 517–18. Because the

---

[18] Because the defendant's original term of commitment has expired in this case, we need not decide whether it is possible for the validity of the presumption of dangerousness to cease before expiration of the maximum period set by the court pursuant to General Statutes § 17a-582 (e) (1) (A).

underlying criminal conduct may be relatively minor, and indeed need not involve a crime of violence, the presumption of the existence of facts warranting the defendant's commitment does not survive the expiration of the maximum term of criminal sanctions.[19]

Finally, our conclusion is consistent with our recognition, in *State* v. *Joyner,* 225 Conn. 450, 467, 625 A.2d 791 (1993),[20] that our state jurisprudence assigns constitutional import to a defendant's right to present an insanity defense. Burdening the successful assertion of an insanity defense with a presumption of insanity and dangerousness that has no time constraints would seriously undermine a criminal defendant's recourse to such a defense.

Accordingly, we conclude that the trial court's recommitment of the defendant must be vacated. We will, however, stay the effective date of our order for a reasonable period of time to enable the state to ask the trial court for a new hearing at which the state will bear the burden of proving the defendant's continued insanity and dangerousness.

The judgment is reversed.

In this opinion the other justices concurred.

---

[19] In contrast to Connecticut's statutory scheme, the ABA recommends that special commitment procedures apply only to those who were acquitted of "felonies involving acts causing, threatening, or creating a substantial risk of death or serious bodily harm" and that in all other circumstances the procedures afforded civil committees be employed. ABA Criminal Justice Mental Health Standards (1989) pt. VII, standard 7-7.3. As an empirical matter, no information about the propensities for future violent behavior is gained through an acquittal of nonviolent crimes and, thus, such acquittees are, in the ABA's view, "sufficiently similar in relevant characteristics to general commitment patients that the same procedures for commitment and period review hearings and release [are] appropriate." Id., pp. 413–14.

[20] Our conclusion also finds support in the holdings of courts in other jurisdictions that have reached similar results. See *Application of Noel for Discharge Hearing,* 17 Kan. App. 2d 303, 838 P.2d 336 (1992); *State* v. *Boudreau,* 605 So. 2d 608 (La. 1992); accord *People* v. *Lally,* 19 N.Y.2d 27, 224 N.E.2d 87, 19 N.Y.S.2d 654 (1966).