[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: ACQUITTEES'S MOTION IN LIMINE DATED JANUARY 19, 1999
CT Page 4479
The central issue raised by the acquittee's motion is whether an acquittee applying for discharge from the custody of the Psychiatric Security Review Board ("the Board"), pursuant to General Statutes § 17a-593 (a), subsequent to the expiration of his initial term of confinement, must bear the burden of proof to demonstrate that he is a person who should be discharged. Although subsection (f) of § 17a-593 purports to place the burden of proof at a discharge hearing on the acquittee, this court finds that based upon the holding in State v. Metz, 230 Conn. 400
(1994), this burden should shift to the state to comport with concepts of equal protection under both the state and federal constitutions.
On April 23, 1978, the acquittee, John Franklin, was found not guilty by reason of mental disease or defect of the crime of manslaughter, and was committed to the custody of the Commissioner of Mental Health for a period not to exceed ten years, pursuant to General Statutes § 17a-582. He was subsequently committed to the jurisdiction of the Board by operation of law effective July 1, 1985.
Pursuant to General Statutes §§ 53a-35 and 53a-55, the maximum criminal sentence which the court could have imposed on the acquittee for a conviction of manslaughter was twenty years. Had the acquittee been convicted of manslaughter, the maximum sentence he could have received would have expired on April 23, 1998.
The acquittee was recommitted by the Superior Court to the jurisdiction of the Board for an indefinite period of time on April 25, 1988, by virtue of the State's petition for recommitment, pursuant to General Statutes § 17a-593 (c). At that time, the burden of proof rested on the acquittee to prove, by a preponderance of the evidence, whether he was a person to be discharged.
In Metz, supra, 425, the Connecticut Supreme Court held that CT Page 4480 where the state initiates recommitment of an acquittee by filing a petition pursuant to § 17a-593 (c), the burden shifts to the state to prove, by clear and convincing evidence, that the acquittee needs to be confined. See also State v. Cohens, Superior Court, judicial district of Hartford, Docket No. 43236 (March 15, 1999) (24 Conn. L. Rptr. 212); State v. Pallotolo, Superior Court, judicial district of New London at New London, Docket No. 21986 (January 9, 1996).
A careful reading of Metz, supra, persuades this court that the Metz rationale should naturally extend to those seeking discharge pursuant to § 17a-593 (a) subsequent to being recommitted indefinitely pursuant to a petition filed by the state under § 17a-593 (c), an issue of first impression for the State of Connecticut.
It is important to note that the Metz court justified the shifting of the burden of proof onto the state on the basis that the "presumption of dangerousness" disappears after an acquittee completes his initial term of confinement. By virtue of this decision, subsection (f) of § 17a-593 has been rendered partially unconstitutional.
Once an acquittee's initial period of confinement has expired, he can no longer be held unless the court finds that he remains both mentally ill and a danger to himself or others. See Payne v.Fairfield, 215 Conn. 675, 683-84. "`The purpose of commitment following an insanity acquittal, like that of civil commitment, is to treat the individuals's mental illness and protect him and society from his potential dangerousness. The committed acquittee is entitled to release when he has recovered his sanity or is no longer dangerous. . . . As he was not convicted, he may not be punished. His confinement rests on his continuing illness and dangerousness.'" Id., quoting Jones v. United States,463 U.S. 354, 368-69. An acquittee who serves out his entire term of commitment but still continues to satisfy the requirements for continued commitment, as contained in § 17a-593, may be committed further. However, such a commitment at that point is one of a civil rather than a criminal nature.
As the court stated in Metz, supra, 421-22, "Important considerations of policy suggest that the legislature would not have intended to impose, even on an insanity acquittee, a never-ending burden of rebutting an indefinite presumption of continuing insanity and dangerousness. The considered view of CT Page 4481 professional commentators who have promulgated model rules for the commitment of insanity acquittees is that, after expiration of a stated term of commitment, fairness, convenience and symmetry require an insanity acquittee to be treated like others committed for mental illness. See ABA Criminal Justice Mental Health Standards (1989) pt. VII, pp. 435-36."
Therefore, an application filed by an acquittee for discharge when his initial term of confinement has passed should be subject to the standard used in general civil commitment discharge hearings, as it is when the state files a petition for recommitment at this time; that is, placing the burden on the state to prove, by clear and convincing evidence, that the individual is a person who should remain confined.
Accordingly, the acquittee's motion is granted.
Barry, J.