IN RE CARLOS Q.*
(AC 20497)

Lavery, C. J., and Dranginis and Peters, Js.

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

Argued November 28, 2000—officially released April 10, 2001

*Grace Cavero Feliu*, supervisory assistant public defender, for the appellant (respondent).

*Michael Besso*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *Susan T. Pearlman*, assistant attorney general, for the appellee (petitioner).

*Opinion*

PETERS, J. This case concerns the validity of an extension of the period of a juvenile's commitment to the commissioner of children and families (commissioner). The dispositive issue is whether the commissioner may obtain such an extension if the commissioner fails to act within the time constraints established by and incorporated in General Statutes § 17a-10 (d).[1] Contrary to the view of the trial court,

---

[1] General Statutes § 17a-10 (d) provides: "If the Superior Court requests a report on any committed child, the commissioner shall be responsible for preparing and transmitting such report to the requesting court. Not more than sixty days nor less than thirty days prior to the expiration of the original commitment of any child to the department, the commissioner may petition the court for an extension of commitment pursuant to the provisions of section 46b-141. If the commissioner, or the board of review pursuant to the provisions of section 17a-15, at any time during the commitment of any child, determines that termination of commitment of a child is in the best interest of such child, the commissioner or the board may terminate the commitment and such termination shall be effective without further action by the court."

we conclude that the statutory limitation is mandatory and reverse the judgment of the trial court.

As a matter of procedure, on January 14, 2000, nine days before the juvenile's commitment was set to expire, the commissioner filed a petition for its extension pursuant to General Statutes § 46b-141 (b).[2] The respondent (juvenile) filed a motion to dismiss the petition on the ground that it was untimely in light of § 17a-10 (d). The court, however, denied the motion to dismiss and thereupon rendered a judgment granting the commissioner the extension that she sought. The juvenile has appealed.

As a matter of substance, the undisputed facts demonstrate the following. On July 23, 1998, the juvenile was convicted as a delinquent following his plea of guilty for violating General Statutes (Rev. to 1997) § 53a-70.[3] In that proceeding, the juvenile admitted to having sexually assaulted his younger sister on three separate occasions within a two year span.[4] Following the juve-

[2] General Statutes § 46b-141 (b) provides: "The Commissioner of Children and Families may petition the court for an extension of the commitment as provided in subdivision (1) of subsection (a) beyond the eighteen-month period on the grounds that such extension is for the best interest of the child or the community. The court shall give notice to the parent or guardian and to the child at least fourteen days prior to the hearing upon such petition. The court may, after hearing and upon finding that such extension is in the best interest of the child or the community, continue the commitment for an additional period of not more than eighteen months."

[3] General Statutes (Rev. to 1997) § 53a-70 (a) provides: "A person is guilty of sexual assault in the first degree when such person (1) compels another person to engage in sexual intercourse by the use of force against such other person or a third person, or by the threat of use of force against such other person or against a third person which reasonably causes such person to fear physical injury to such person or a third person, or (2) engages in sexual intercourse with another person and such other person is under thirteen years of age and the actor is more than two years older than such person, or (3) commits sexual assault in the second degree as provided in section 53a-71 and in the commission of such offense is aided by two or more other persons actually present."

[4] At the time of the first incident, the juvenile was eleven years old and his sister was eight and one-half.

nile's conviction, the court committed the juvenile to the custody of the department of children and families (department) for a period not to exceed eighteen months.[5] That commitment was set to expire on January 23, 2000. Only nine days prior to the expiration date, the commissioner filed a petition to extend the juvenile's commitment. Neither the juvenile nor his counsel was immediately notified of the pendency of the petition.[6]

The juvenile has raised two issues on appeal. On statutory grounds, he argues that the court improperly granted a belated extension petition. This claim focuses on the time limits for such a petition that are set out in § 17a-10 (d). On constitutional grounds, he argues that the judgment violated his due process rights to a fair hearing because he did not have sufficient notice to enable him to prepare for that hearing. Both issues were adequately raised at trial.

The law is well settled that the issues raised by the juvenile "are entitled to plenary appellate review because the court's judgment was based entirely on the legal inferences to be drawn from presently uncontested facts." *Connecticut Post Ltd. Partnership* v. *South Central Connecticut Regional Council of Governments*, 60 Conn. App. 21, 25, 758 A.2d 408, cert. granted on other grounds, 255 Conn. 903, 762 A.2d 907 (2000), citing *SLI International Corp.* v. *Crystal*, 236 Conn. 156, 163, 671 A.2d 813 (1996).

It is common ground between the parties that the proper construction of § 17a-10 (d) is the dispositive issue in this case. The juvenile claims that, in light of that statute, the court lacked the statutory authority to

---

[5] The court directed the department to place the juvenile in a residential facility known as Brightside School.

[6] The original petition had a hearing date of January 24, 2000. The commitment expired on January 23, 2000, a Sunday. An amended petition was filed on January 20, 2000, with an amended hearing date of January 21, 2000.

extend his commitment because the commissioner's petition for such an extension was filed too late. He argues that § 17a-10 (d) *requires* the commissioner to petition the court for an extension of commitment "[n]ot more than sixty days nor less than thirty days prior to the expiration of the original commitment of [the] child . . . ."[7] Although the statute states that "the commissioner *may* petition the court for an extension of commitment"; (emphasis added) id.; in the juvenile's view "*may*" does not make the filing period permissive. The commissioner, on the other hand, urges us to construe "may" literally and permissively.[8]

We approach the task of statutory construction from two related points of view. First, we seek to determine, in a reasoned manner, "the meaning of the statutory language as applied to the facts of this case . . . . In seeking to determine that meaning, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Internal quotation marks omitted.) *Driscoll* v. *General Nutrition Corp.*, 252 Conn. 215, 221, 752 A.2d 1069 (2000). Second, if possible, we construe a statute so as to avoid placing it in constitutional jeopardy. *State* v. *Metz*, 230 Conn. 400, 422–23, 645 A.2d 965 (1994); *Sassone* v. *Lepore*, 226 Conn. 773, 785, 629 A.2d 357 (1993); see *Kron* v. *Thelen*, 178 Conn. 189, 197, 423 A.2d 857 (1979).

The juvenile argues that we should interpret the statute to mean that the commissioner *may*, in her discre-

---

[7] The juvenile acknowledges that it is within the commissioner's discretion to decide whether to petition for an extension of commitment.

[8] We have never assigned dispositive significance to statutory use of "may" or "shall." See *Alexander* v. *Retirement Board*, 57 Conn. App. 751, 764–65, 750 A.2d 1139, cert. denied, 254 Conn. 902, 755 A.2d 217 (2000), citing *Capobinco* v. *Samorak*, 102 Conn. 310, 313, 128 A. 648 (1925).

tion, petition the court for an extension of commitment, but that any such petition *must* be filed "[n]ot more than sixty days nor less than thirty days prior to the expiration of the original commitment of any child to the department . . . ." General Statutes § 17a-10 (d). If the court agrees, he argues, the department must release him from its custody on the date on which his commitment expires. According to the juvenile, the commissioner's filing violated § 17a-10 (d) because the commissioner filed the petition a mere nine days before his commitment was set to expire. That limited time period did not, he claims, afford him the right to the proper notice as specified in § 46b-141 (b), which § 17a-10 (d) expressly incorporates. See footnote 1.

The commissioner argues to the contrary. She rests most of her argument on the use of the word *"may"* in § 17a-10 (d). In her view, that language permits an extension petition to be filed at any time before the expiration of a child's commitment, even the day before. Although she does not deny that an expedited hearing may put a juvenile at a disadvantage, she maintains that she needs the flexibility that is implied in the use of "may" in order properly to supervise conditions in a juvenile's life that suddenly may change, such as the unavailability of the person to whom the juvenile was expected to go after his release from commitment. In support of a permissive construction of "may," the commissioner cites *In re Adrien C.*, 9 Conn. App. 506, 512, 519 A.2d 1241, cert. denied, 203 Conn. 802, 522 A.2d 292 (1987), in which this court held a "shall" provision to be permissive.

We agree with the commissioner that, as a general rule, the use of "may" in § 17a-10 (d) presumptively should be construed to be directory rather than mandatory. See, e.g., *Office of Consumer Counsel* v. *Dept. of Public Utility Control*, 252 Conn. 115, 122, 742 A.2d 1257 (2000). The general rule is, however, subject to

override if "the context in which it is employed requires otherwise . . . ." (Internal quotation marks omitted.) Id.

In this case, the relevant context is that § 17a-10 (d) not only describes a time period for filing a petition for extension of commitment, but also incorporates a mandatory provision for timely notice to the juvenile whose status is at issue. See footnotes 1 and 2. The notice provision in § 46b-141 (b), which is incorporated in § 17a-10 (d) and uses the word "*shall*," obligates the court to give notice to the parent and the juvenile "at least fourteen days prior to the hearing" to determine whether there is a basis for extending the juvenile's commitment. See footnote 2.

The record unequivocally establishes that the notice provision was ignored in this case. The petition was filed on January 14, 2000, and was heard and granted on January 21, 2000.[9] The commissioner's request for a prompt hearing was undoubtedly motivated by the expiration of the juvenile's commitment on January 23, 2000. The commissioner has not explained, however, how her belated filing to beat the clock justifies depriving the juvenile of a mandatory statutory right to notice.

On this record, we conclude that the juvenile's construction of the statute is proper. It is familiar learning that we construe a statute as a whole, seeking to give effect to all of its text. *Hall Manor Owner's Assn.* v. *West Haven*, 212 Conn. 147, 154, 561 A.2d 1373 (1989). The appropriate way to reconcile all the parts of § 17a-10 (d) is to construe its permissive language to refer to the discretionary power to decide whether to seek

---

[9] We need not decide whether a failure to file a petition within the window of opportunity defined by the statute could be cured by postponing a hearing so as to give timely notice and a reasonable opportunity to be heard. In this case, such a postponement was not feasible because the juvenile's commitment was scheduled to terminate on January 23, 2000.

an extension of commitment. The remainder of the section, in view of its incorporation of § 46b-141, imposes mandatory time constraints with respect to the filing of such an extension and to the notice to be provided to and for the benefit of the juvenile. We are not persuaded that the legislature intended to make a nullity of its carefully crafted notice requirement.

Our reading of § 17a-10 (d) is reinforced by principles of constitutional prudence. We "are guided by the principle that we should seek to construe [a] statute so as not to place it in constitutional jeopardy." *State* v. *Metz*, supra, 230 Conn. 422–23. In the present case, if we were to accept the commissioner's argument and deprive the juvenile of a timely opportunity to challenge the commissioner's petition, we would be overlooking the constitutional principle that the absence of timely notice violates a juvenile's due process rights to a fair hearing. See *Ledgebrook Condominium Assn., Inc.* v. *Lusk Corp.*, 172 Conn. 577, 583, 376 A.2d 60 (1977); see also *Armstrong* v. *Manzo*, 380 U.S. 545, 552, 85 S. Ct. 1187, 14 L. Ed. 2d 62 (1965).

Our Supreme Court has "held that it is a principle of natural justice of universal obligation, that before the rights of an individual be bound by a judicial sentence he shall have notice . . . of the proceedings against him. . . . Fundamental tenets of due process, moreover, require that all persons directly concerned in the result of an adjudication be given reasonable notice and the opportunity to present their claims or defenses." (Citations omitted; internal quotation marks omitted.) *Kron* v. *Thelen*, supra, 178 Conn. 193. *Kron* is especially instructive because, in that case, our Supreme Court held that principles of due process required that a mandatory notice requirement be read into a statute that, on its face, contained no reference whatsoever to timely notice.

We recognize that the commissioner argues that this court should follow the analysis set forth in *In re Adrien C.*, supra, 9 Conn. App. 512, to conclude that the "may" provision of § 17a-10 (d) is directory. In *In re Adrien C.*, the statute in question, General Statutes (Rev. to 1983) § 46b-129 (e) provided in relevant part: "Ninety days before the expiration of each eighteen-month commitment made in accordance with the provisions of subsection (d) of this section . . . the commissioner . . . *shall* petition the court either to (1) revoke such commitment . . . (2) terminate parental rights . . . or (3) extend the commitment . . . ." (Emphasis added.)

In that case, this court concluded that the ninety day prescription established in § 46b-129 (e) was directory rather than mandatory. It stated the following: "The test to be applied in determining whether a statute is mandatory or directory is whether the prescribed mode of action is the essence of the thing to be accomplished, or in other words, whether it relates to a matter of substance or a matter of convenience. . . . If it is a matter of substance, the statutory provision is mandatory. . . . If, however, the legislative provision is designed to secure order, system and dispatch in the proceedings, it is generally held to be directory, especially where the requirement is stated in affirmative terms unaccompanied by negative words." (Citations omitted; internal quotation marks omitted.) *In re Adrien C.*, supra, 9 Conn. App. 510. The commissioner in the present case claims that the "may" provision in § 17a-10 (d) is designed to secure order, system and dispatch, and, therefore, it is directory.

We conclude that *In re Adrien C.* is not persuasive under these circumstances because, in undertaking its analysis in that decision, this court did not consider the due process implications. Perhaps no such argu-

ment was made at that time, but the juvenile has raised it squarely in this case. We cannot ignore it.

We conclude, therefore, that it is proper to construe § 17a-10 (d) to make time constraints mandatory, in light of its incorporation of § 46b-141, to avoid confronting a constitutional challenge to the validity of § 17a-10 (d). A statute that expressly requires due notice to be given comports with the constitutional requirements of due process. We are persuaded that the legislature did not intend to subordinate such a statutory notice requirement to a discretionary time within which the commissioner must act to extend a juvenile's commitment.

In sum, we conclude that the petition filed by the commissioner was not timely under § 17a-10 (d) and that the hearing requested by the commissioner was flawed because of the failure to comply with the notice requirement incorporated in § 17a-10 (d). The juvenile's motion to dismiss should have been granted.

The judgment is reversed and the case is remanded with direction to render judgment dismissing the petition and ordering the juvenile's release.

In this opinion the other judges concurred.