# IN RE STEVEN M.*
## (AC 20866)

Lavery, C. J., and Foti and Peters, Js.

Argued October 31, 2001—officially released February 26, 2002

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

428

*Sandra A. Trionfini,* guardian ad litem, with whom, on the brief, was *Gareth D. Bye,* guardian ad litem, for the appellant (respondent).

*Michael Besso,* assistant attorney general, with whom, on the brief, were *Richard Blumenthal,* attorney general, and *Susan T. Pearlman,* assistant attorney general, for the appellee (petitioner).

*Opinion*

FOTI, J. The respondent appeals from the judgment of the trial court granting the motion filed by the petitioner, the commissioner of children and families (commissioner), to transfer him from Long Lane School to the John R. Manson Youth Institution pursuant to General Statutes § 17a-12 (a).[1] The respondent first claims that § 17a-12 (a) is unconstitutional on its face. We need not reach that claim. In the alternative, he argues that the application of the statute is unconstitutional because he was denied due process of law. The trial

---

[1] General Statutes § 17a-12 (a) provides in relevant part: "When the commissioner, or his designee, determines that a change of program is in the best interest of any child or youth committed or transferred to the department, he, or his designee, may transfer such person to any appropriate resource or program administered by or available to the department, to any other state department or agency . . . and further provided no transfer shall be made to any institution, hospital or facility under the jurisdiction of the Department of Correction . . . unless it is so ordered by the Superior Court after a hearing. When, in the opinion of the commissioner, or his designee, a person fourteen years of age or older is dangerous to himself or others or cannot be safely held at Long Lane School, or any other facility within the state available to the Commissioner of Children and Families, the commissioner, or his designee may request an immediate hearing before the Superior Court on the docket for juvenile matters where such person was originally committed to determine whether such person shall be transferred to the John R. Manson Youth Institution, Cheshire, if a male . . . ."

court rejected his claims. We disagree and vacate the judgment of the trial court.

The respondent is a mentally disabled youth with the intellect of a four to five year old.[2] In 1991, he was committed to the custody of the commissioner on the basis of a finding of parental neglect. On July 15, 1998, the respondent was transferred to Riverview Hospital (hospital).[3] Thereafter, the respondent faced charges, including disorderly conduct and criminal mischief, on the basis of altercations with hospital personnel. On April 14, 1999, the court ordered a competency evaluation performed and committed the respondent to the custody of the commissioner, placing him at Long Lane School for eighteen months.[4]

After the respondent was arrested and charged with assaulting personnel at the hospital, the commissioner filed a motion, pursuant to § 17a-12 (a), to transfer him from Long Lane School to John R. Manson Youth Institution, claiming that he was dangerous to himself and others.[5] On April 3, 2000, the court heard arguments regarding the transfer. At the hearing, after the respondent's counsel informed the court that he could not ascertain his client's position regarding the transfer order, the court appointed a guardian ad litem to represent the respondent. The court ordered the respondent transferred from Long Lane School to John R. Manson Youth Institution. At no time did the court determine the respondent's competency. On August 30, 2000, the

---

[2] The respondent reached the age of majority after he filed this appeal.

[3] Riverview Hospital is associated with Unified School District No. 2, a special school district within the department of children and families established pursuant to General Statutes § 17a-37. *Unified School District No. 1* v. *Dept. of Education*, 64 Conn. App. 273, 276 n.3, 780 A.2d 154, cert. denied, 258 Conn. 910, 782 A.2d 1253 (2001).

[4] Long Lane School is a juvenile facility maintained by the department of children and families. General Statutes § 17a-3.

[5] The John R. Manson Youth Institution is a correctional institution. General Statutes § 1-1 (w).

court held a hearing to receive reports about the respondent's pending adult criminal matters and to review with the department of mental health and addiction services whether there were any other facilities available and appropriate for the respondent.

Thereafter, on November 6, 2000, the petitioner removed the respondent from John R. Manson Youth Institution and transferred him to Arbor-Fuller Hospital in South Attleboro, Massachusetts. The respondent resided at Arbor-Fuller Hospital until November 11, 2000, when he was discharged and again placed at Long Lane School by the commissioner, where he remained until his eighteenth birthday.[6] This appeal followed.

As a preliminary matter, the petitioner argues that this court lacks subject matter jurisdiction over this appeal because it is moot. She argues that because the respondent was returned to Long Lane School, and because he has reached the age of majority and was discharged from the commissioner's custody pursuant to his delinquency commitment, he no longer is subject to § 17a-12 (a). We agree that our decision will not affect the respondent personally. We conclude, however, that all three requirements are met to qualify for appellate review under the capable of repetition, yet evading review exception to the mootness doctrine.[7] Accordingly, we address each of the issues raised on appeal.[8]

---

[6] Upon his eighteenth birthday, the petitioner was placed in the custody of the commissioner of the department of mental retardation. He continues to reside in a cottage located at the Long Lane School facility in Middletown over which the department of mental retardation assumed full operational control on June 1, 2001. He was expected to be moved to another department of mental retardation facility in October, 2001.

[7] Because we conclude that the questions raised in this appeal qualify for review under an exception to the mootness doctrine, the petitioner's motion to dismiss filed with this court on October 1, 2001, is denied.

[8] "Our cases reveal that for an otherwise moot question to qualify for review under the 'capable of repetition, yet evading review' exception, it must meet three requirements. First, the challenged action, or the effect of the challenged action, by its very nature must be of a limited duration so that there is a strong likelihood that the substantial majority of cases raising

The respondent first claims that § 17a-12 (a) is unconstitutional on its face because it (1) deprives him of his liberty interest without procedural due process, (2) mandates penal confinement without conviction after a fair trial, (3) is too vague and overbroad, (4) arbitrarily impacts youth committed to the commissioner and deprives them of a liberty interest, and (5) amounts to cruel and unusual punishment.[9]

We decline to address the claim that § 17a-12 (a) is unconstitutional on its face. Rather, we address the respondent's claim that as the statute was applied, he was denied procedural due process. "A party has standing to challenge the constitutionality of a statute only insofar as it has an adverse impact on his own rights. As a general rule, if there is no constitutional defect in the application of the statute to a litigant, he does not have standing to argue that it would be unconstitutional if applied to third parties in hypothetical situations." (Internal quotation marks omitted.) *State* v. *Korhn,* 41 Conn. App. 874, 878, 678 A.2d 492, cert. denied, 239 Conn. 910, 682 A.2d 1010 (1996). We therefore conclude that the respondent has no standing to challenge the constitutionality of § 17a-12 (a) on its face.

a question about its validity will become moot before appellate litigation can be concluded. Second, there must be a reasonable likelihood that the question presented in the pending case will arise again in the future, and that it will affect either the same complaining party or a reasonably identifiable group for whom that party can be said to act as surrogate. Third, the question must have some public importance. Unless all three requirements are met, the appeal must be dismissed as moot." *Loisel* v. *Rowe,* 233 Conn. 370, 382–83, 660 A.2d 323 (1995).

[9] The respondent also claims that General Statutes § 17a-12 (a) violates the constitution of Connecticut in several ways. "Because the [respondent] has not briefed his claim[s] separately under the Connecticut constitution, we limit our review to the United States constitution. We have repeatedly apprised litigants that we will not entertain a state constitutional claim unless the [respondent] has provided an independent analysis under the particular provisions of the state constitution at issue. . . . Without a separately briefed and analyzed state constitutional claim, we deem abandoned the [respondent's] claim[s] . . . ." (Internal quotation marks omitted.) *State* v. *Jones,* 65 Conn. App. 649, 652 n.6, 783 A.2d 511 (2001).

We now turn to the respondent's procedural due process claim. Specifically, the respondent argues that he was denied due process of law because the court improperly failed to determine his competency prior to ordering his transfer from Long Lane School, a department of children and families (department) facility, to John R. Manson Youth Institution, a correctional institution. We agree.

"The requirements for a successful due process claim are well established. The fourteenth amendment to the United States constitution provides that the State [shall not] deprive any person of life, liberty, or property, without due process of law . . . . In order to prevail on his due process claim, the [respondent] must prove that: (1) he has been deprived of a property [or liberty] interest cognizable under the due process clause; and (2) the deprivation of the property [or liberty] interest has occurred without due process of law." (Internal quotation marks omitted.) *State* v. *Angel C.*, 245 Conn. 93, 104, 715 A.2d 652 (1998).

"[I]t is important to understand that commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." (Internal quotation marks omitted.) *In re Jason C.*, 255 Conn. 565, 579, 767 A.2d 710 (2001), quoting *Jones* v. *United States*, 463 U.S. 354, 361, 103 S. Ct. 3043, 77 L. Ed. 2d 694 (1983). Furthermore, the United States Supreme Court has noted that due process protections may be extended to a decision to impose solitary confinement because "[it] represents a major change in the conditions of confinement and is normally imposed only when it is claimed and proved that there has been a major act of misconduct." (Internal quotation marks omitted.) *Vitek* v. *Jones*, 445 U.S. 480, 488, 100 S. Ct. 1254, 63 L. Ed. 2d 552 (1980). We conclude that the circumstances in this case give rise to a liberty interest.

"The United States Supreme Court clearly has established that constitutional due process protections apply in the juvenile setting. *In re Gault*, 387 U.S. 1, 87 S. Ct. 1428, 18 L. Ed. 2d 527 (1967). In *In re Gault*, supra, 27–28, the court explained that '[i]t is of no constitutional consequence—and of limited practical meaning—that the institution to which [a child] is committed is called an Industrial School. The fact of the matter is that, however euphemistic the title, a "receiving home" or an "industrial school" for juveniles is an institution of confinement in which the child is incarcerated for a greater or lesser time. . . . In view of this, it would be extraordinary if our Constitution did not require the procedural regularity and the exercise of care implied in the phrase "due process." Under our Constitution, the condition of being a [child] does not justify a kangaroo court.' " *In re Jason C.*, supra, 255 Conn. 576.

" 'A proceeding where the issue is whether the child will be found to be "delinquent" and subjected to the loss of his liberty for years is comparable in seriousness to a felony prosecution.' *In re Gault*, supra, 387 U.S. 36. '[C]ommitment is a deprivation of liberty. It is incarceration against one's will, whether it is called "criminal" or "civil." ' Id., 50." *In re Jason C.*, supra, 255 Conn. 579. When an adult is prosecuted, due process mandates that the person be legally competent to stand trial before he can be convicted of a crime. See *State* v. *Williams*, 65 Conn. App. 59, 84, 782 A.2d 149, cert. denied, 258 Conn. 923, 782 A.2d 1251 (2001).

A juvenile cannot be transferred from Long Lane School to John R. Manson Youth Institution unless the court orders the transfer after a hearing. General Statutes § 17a-12 (a). Prior to the respondent's transfer hearing, he was diagnosed as suffering from dysthymia, conduct disorder, mild mental retardation and borderline personality disorder. Furthermore, the petitioner acknowledges that there was concern regarding the

respondent's competency with respect to pending adult criminal proceedings.[10] In fact, the court appointed a guardian ad litem to represent the respondent's interests. Nonetheless, the court ordered the transfer of the respondent from Long Lane School to John R. Manson Youth Institution without making a finding as to the respondent's competency.[11]

We hold that to comply with procedural due process, the court must first determine the competency of the juvenile before ordering a transfer from a department facility, Long Lane School, to a department of correction facility, John R. Manson Youth Institution.

Additionally, § 17a-12 (a) requires that a transfer from one facility to another be in the best interest of the child. "The State has 'a parens patriae interest in preserving and promoting the welfare of the child,' *Santosky* v. *Kramer*, 455 U.S. 745, 766, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982), which makes a juvenile proceeding fundamentally different from an adult criminal trial. We have tried, therefore, to strike a balance—to respect the 'informality' and 'flexibility' that characterize juvenile proceedings, *In re Winship*, [397 U.S. 358, 366, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970)], and yet to ensure that such proceedings comport with the 'fundamental fairness' demanded by the Due Process Clause." *In re Steven G.*, 210 Conn. 435, 440–41, 556 A.2d 131 (1989). To comport with fundamental fairness, and in accord with the state's parens patriae interest, the court must determine whether the proposed transfer is in the best

---

[10] In addition, the court had before it a letter authored by the department of children and families alerting the court to the "likelihood" that the respondent would be found incompetent in the pending adult criminal matters.

[11] The petitioner cites *In re Appeal of Bailey*, 158 Conn. 439, 262 A.2d 177 (1969), to support her contention that because the respondent has not established that John R. Manson Youth Institution is a penal institution as to his placement there, this court may reject the respondent's due process claim. That case is inapposite to the present one. In that case, the juvenile did not claim that he was deprived of procedural due process.

interest of the child after it finds the juvenile to be competent.[12]

Although our decision here cannot affect the respondent, for purposes of future transfer proceedings, the court must first consider the child's competency and then determine if the transfer is in the best interest of the child, including considering evidence of alternatives to incarceration at John R. Manson Youth Institution.

The judgment is vacated and the matter is remanded with direction to render judgment of dismissal.

In this opinion PETERS, J., concurred.

LAVERY, C. J., concurring. I concur in the result reached by the majority, but I write separately because I believe that under the circumstances of this case, the department of children and families breached the duty that it owed to the respondent.

The respondent has multiple disabilities. He frequently displays aggressive behavior, and his large size makes him difficult to manage. It is clear that the state of Connecticut could not formulate a plan to handle the respondent adequately. In that regard, the record reflects that on March 17, 2000, an interagency committee met to review the respondent's case and to develop a coordinated plan to serve him. Twenty-six professionals were present at that meeting, representing the department of correction, the department of mental health and addiction services, the department of mental retardation, and the department of children and families. Robert W. Plant, superintendent for Riverview Hospital, and Patrick Russolillo, supervising psychologist for the

---

[12] At the April 3, 2000 hearing, the respondent's guardian ad litem argued that the transfer would not be in the respondent's best interest and made an offer of proof regarding evidence on the best interest issue. The court improperly declined to take evidence on matters beyond the criteria established by General Statutes § 17a-12.

Long Lane School, also were present at that meeting. Plant and Russolillo jointly authored a letter to the court, dated March 17, 2000, which indicated that the respondent should be treated in a specially designed and secure treatment setting; however, because no such setting was available, Plant and Russolillo recommended transfer to Hartford Detention or to John R. Manson Youth Institution.[1] Because the department of children and families could not facilitate an adequate mental health placement for the respondent, he was transferred to John R. Manson Youth Institution, where he was incarcerated in solitary confinement.

General Statutes § 17a-12 (a) allows for the transfer of "a person fourteen years of age or older" who is "dangerous to himself or others or cannot be safely held at Long Lane School . . . ." The statute does not take into account an individual with the respondent's disabilities. I believe, however, that transferring the respondent to a penal institution, and incarcerating him in solitary confinement when he is not a criminal, is not within the contemplation of the statute. Individuals such as the respondent require appropriate mental health services, not incarceration in a prison cell. Unless the respondent is placed in an appropriate therapeutic setting, he will not learn how to modify his behavior.

[1] The letter stated in relevant part: "Based on a review of his history and current functioning the team has determined that [the respondent] can only be effectively treated in an environment equipped to safely contain his rage and aggression. At present, there is no known facility of this kind outside of a correctional facility. In the long term, the team is in agreement that [the respondent] will best be served outside of the correctional system in a specially designed and secure treatment setting that we are working together (DMHAS, DCF, DMR & DOC) to develop. In the short-term we feel that he is best served in a highly secure setting such as Hartford Detention or Manson Youth. DCF is committed to arranging for Mental Health Services and Restoration of Competency to be provided in whatever setting can safely maintain him. Our experience has been that he cannot be safely maintained at either Long Lane or Riverview Hospital."

It is not the respondent's fault that the state was unable to provide adequate mental health or mental retardation services. The respondent filed the present appeal on June 6, 2000. On November 6, 2000, he was transferred from his placement in solitary confinement at John R. Manson Youth Institution to the Arbor-Fuller Hospital in Massachusetts. Less than one week later, on November 11, 2000, he was transferred back to the Long Lane School and remained there until his current placement as set forth in footnote 6 of the majority opinion. That placement could have been made much earlier so that the respondent did not have to suffer a Dickens "Bleak House" experience.

Children with mental illness who are committed to the department of children and families must be offered adequate treatment programs corresponding to their individual needs. The respondent has a profound need for such services. Instead of providing appropriate services, the respondent was incarcerated in a prison cell. In taking that action, the department of children and families breached the duty that it owed to the respondent.

I am writing this concurrence so that no mentally handicapped child will ever have to suffer the debilitating treatment suffered by the respondent. If the department of children and families does not have a facility to handle a disabled child in its custody, it has a duty to find a facility equipped to handle the disability and place the child in a proper setting.