[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The respondent's motion to vacate the court's extension of his commitment is ordered granted on the grounds that at the time of his initial commitment, the court did not advise the respondent that his commitment could be extended beyond the initial period of commitment and; at the hearing on the motion to extend, the court did not advise the CT Page 7824 respondent of the rights he was waiving by agreeing to the extension.
 FACTS
According to the record, on May 12, 1999, the respondent, in the presence of his attorney, pleaded guilty to three counts of risk of injury to a minor. Before accepting the plea, the court. canvassed the respondent to determine whether he understood the nature of the charges, to possible sentence and the information that the court was conveying to him. The court also advised the respondent that by entering a plea, he was waiving his right to a trial. In addition, the court determined that the respondent had been given an opportunity to consult with his attorney and was satisfied with the representation his attorney had provided to him. The court found that the respondent was entering his plea knowingly, voluntarily and with the effective assistance of competent counsel, accepted the plea and adjudicated the respondent a delinquent. On May 26, 1999, at the disposition hearing, the court committed the respondent to the custody of the Department of Children and Families (hereinafter DCF or the Department) for a period not to exceed eighteen months, to be effective upon the respondent's placement. The respondent's attorney was also present at this hearing. The respondent was placed in a residential treatment facility in Rhode Island on September 2, 1999. Accordingly, his initial commitment would expire on March 2, 2001.
On January 31, 2001, the Department filed a petition to extend the respondent's commitment for an additional eighteen months. According to the marshal's return of service, the marshal served the petition on the respondent in hand and on his mother by abode service on February 14, 2001. The court held a hearing on the petition on February 27, 2001. The respondent attended the hearing and the court appointed a special public defender to represent him. The respondent's parents also attended, as did a juvenile prosecutor. Pursuant to an agreement between the prosecutor, the respondent's attorney and the respondent's mother, the court extended the respondent's commitment for an additional eighteen months from March 2, 2000, to September 2, 2002. According to the respondent's attorney, the respondent did not object to the petition because he wanted to remain at the facility where he had been placed. The department subsequently transferred the respondent to a residential treatment facility in Connecticut. When that facility closed, the Department transferred him to the Connecticut Juvenile Training School.
On August 14, 2001, the respondent filed a motion to vacate the extension of his commitment pursuant to General Statutes § 46b-141, the fifth and fourteenth amendments to the United States constitution, article first, §§ 8 and 9, of the Connecticut constitution, and the doctrine established by the Connecticut Supreme Court in In re Jason C., CT Page 7825255 Conn. 565, 767 A.2d 710 (2001).[1] On December 10, 2001, The Department filed a memorandum in Opposition to the respondent's motion.[2] The court held hearings on the respondent's motion on August 31, 2001, and December 21, 2001.
The respondent's motion is premised on two arguments: at the hearings in which the court accepted the respondent's guilty plea, adjudicated him a delinquent and imposed the initial eighteen month commitment on the him, the court failed to advise him of the possibility that the court could extend his commitment beyond that time period; and at the hearing on the petition to extend his commitment, the court failed to canvass him as to whether he was aware of the rights he was waiving by not contesting the petition. The Department's opposition is based on its contention that the court should not consider the merits of the respondent's motion because his argument is a collateral attack on a prior judgment, which cannot be raised in the context of a motion to vacate. Furthermore, DCF contends that even if the respondent's motion were procedurally proper, the court should deny it for the following reasons: the respondent did not submit evidence that he was not advised that the court could extend his commitment; and the requirement that he must be so advised did not exist at the time of his commitment and does not apply retroactively. Moreover, DCF contends that even if the requirement is retroactive, the respondent has not shown that if the court had so advised him, it would have made a difference in his decision to plead guilty. Finally, DCF argues that if the court does determine that the respondent's plea is void, the appropriate resolution is to reinstate the charges against him, not to vacate the extension.
 DISCUSSION
It is undisputed that at the time the trial court accepted the respondent's plea and adjudicated him a delinquent, the court failed to inform the respondent of the possibility that his commitment could be extended. (See transcript of proceedings dated May 12, 1999.) It is also undisputed that in In re Jason C., supra, 255 Conn. 570, the Supreme Court held that a respondent's constitutional right to due process requires that a trial court, when accepting a plea agreement in a juvenile delinquency proceeding, advise the juvenile of this possibility. In that case, the respondents each entered a plea of nob contendere to the charges against them. The trial court, like the trial court in this case, committed the respondents to DCF for a period not to exceed eighteen months, but failed to advise them of the possibility that the Department could petition the court to extend their commitments. DCF filed petitions for extensions and the respondents each filed a motion to dismiss the petition. The trial court granted the respondents' motions on the ground that the trial court's failure to advise them of the CT Page 7826 possibility that their commitments could be extended prevented them from entering knowing and voluntary pleas, in violation of their right to due process and thus, their pleas were invalid.[3] DCF appealed the judgments to the Appellate Court and the Supreme Court transferred the appeals to itself.
The Supreme Court affirmed the judgments of the trial court granting the respondents' motion to dismiss the petitions to extend their commitments. The court examined the constitutional implications of pleas and stressed that a plea "must be knowingly and voluntarily entered so as not to violate due process." (Internal quotation marks omitted.). Id., 571. The court concluded that the respondents did not make their pleas knowingly and voluntarily because the trial court failed to provide them with all the relevant information concerning their commitments. Thus, they had not been made aware of all of the direct consequences of their pleas. The court also determined that the importance of requiring "a knowing and voluntary plea" outweighs the "need to maintain informality and flexibility in the juvenile setting," and that imposition of the requirement that the court inform juveniles of the possibility that their commitments can be extended would not "[risk] destruction of the beneficial aspects of the juvenile process." (Internal quotation marks omitted.) Id., 579.
As noted above, in this case, the trial court accepted the respondent's guilty plea on May 12, 1999, and imposed his initial commitment on May 26, 1999. DCF filed its petition for extension on January 31, 2001, the court held a hearing on the petition on February 27, 2001, and extended the respondent's commitment on that date. The Supreme Court released its opinion in In re Jason C. on March 27, 2001. The issue, therefore, is whether the rule announced in In re Jason C. applies retroactively.[4]
"The United States Supreme Court clearly has established that constitutional due process protections apply in the juvenile setting." Id., 576. "A proceeding where the issue is whether the child will be found to be delinquent and subjected to the loss of his liberty for years is comparable in seriousness to a felony prosecution. . . . [C]ommitment is a depravation of liberty. It is incarceration against one's will, whether it is called criminal or civil." (Citation omitted, internal quotation marks omitted.) Id., 579.
According to the Connecticut Supreme Court, "[a]s a rule, judicial decisions apply retroactively. . . . Indeed, a legal system based on precedent has a built-in presumption of retroactivity. . . . If a new constitutional doctrine is truly right, we should not reverse lower courts which have accepted it, nor should we affirm those which have rejected the very arguments we have embraced. . . . It is clear that CT Page 7827 [c]omplete retroactive effect is most appropriate where a new constitutional principle is designed to enhance the accuracy of criminal trials." (Citations omitted; internal quotation marks omitted.) State v.Ryerson, 201 Conn. 333, 339, 514 A.2d 337 (1986).
In determining whether a judicial decision should be applied retroactively to pending cases, our Supreme Court has also observed that "[t]he courts of the states are free to determine the extent to which new decisions are to have retrospective effect." Neyland v. Board ofEducation, 195 Conn. 174, 179, 487 A.2d 181 (1985) The court then reviewed the "comprehensive, if somewhat confusing, rules on the subject"; id.; developed by the United States Supreme Court. "In ChevronOil Co. v. Huson, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), the [court] suggested a three-factor test to be met before a judicial decision would be applied prospectively only: `First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied . . . or by deciding an issue of first impression whose resolution was not clearly foreshadowed. . . . Second, it has been stressed that `we must . . . weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further retard its operation.' . . . Finally, we have weighed the inequity imposed by retroactive application, for `[w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the "injustice or hardship" by a holding of nonretroactivity.'" (Citations omitted.) Neyland v. Board ofEducation, supra, 195 Conn. 179-80. This test comports with what our Supreme court has recognized as an exception to the general rule of retroactivity: "When a new decision enlarges the constitutional rights of criminal defendants by overruling established precedent, the justifiable reliance by law enforcement authorities on the old standards, and the potentially disruptive effect on the administration of justice by retroactive application of the new standards . . . may militate against retroactive application of the new rule." (Citations omitted; internal quotation marks omitted.) State v. Ryerson, supra, 201 Conn. 340.
In this case, nonretroactivity is not warranted because the decision inIn re Jason C. does not meet the first factor of the test, i.e., it did not establish a new principle of law. Indeed, in its decision, the court explicitly stated, "[t]he status of being a juvenile does not warrant abandonment of the well established rule that a defendant be advised of the direct consequences of his plea." In re Jason C., supra, 255 Conn. 580. The court reviewed some of the decisions that underlie this rule as it has been established in the context of criminal cases and noted: "`A plea of guilty or nob contendere involves the waiver of several fundamental CT Page 7828 constitutional rights and therefore must be knowingly and voluntarily entered so as not to violate due process. Boykin v. Alabama, [395 U.S. 238,243, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969)]; McCarthy v. United States,394 U.S. 459, 466, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969); State v.Badgett, [200 Conn. 412, 417-18, 512 A.2d 160, cert. denied, 479 U.S. 940,107 S.Ct. 423, 93 L.Ed.2d 373 (1986). . . . These constitutional considerations demand the utmost solicitude of which courts are capable in canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and its consequences. . . . Under our rules of practice, a trial judge must not accept a plea of nob contendere without first addressing the defendant personally and determining that the plea is voluntarily made under Practice Book § [39-20] and that the defendant fully understands the items enumerated in Practice Book § [39-19]. State v. Godek, [182 Conn. 353, 357,438 A.2d 114 (1980). . . . Thus for a plea to be valid, the record must affirmatively disclose that the defendant understands [inter alia] the maximum possible sentence. . . .' State v. Gilnite, 202 Conn. 369,381-82, 521 A.2d 547 (1987)." In re Jason C., supra, 255 Conn. 571-72. The court specifically noted that its decision in State v. Collins,176 Conn. 7, 404 A.2d 871 (1978), was particularly relevant. "InCollins, the trial court did not inform the defendant until his sentencing that the offenses to which he pleaded guilty would run consecutive to other sentences he was serving. . . . The trial court refused to allow the defendant to withdraw his plea. . . . In reversing the judgment, this court explained that, `[i]n order for a plea of guilty to be constitutionally valid, it must be equally voluntary and knowing. . . . [I]t cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts. . . . An understanding of the law in relation to the facts must include all relevant information concerning the sentence. The length of time a defendant may have to spend in prison is clearly crucial to a decision of whether or not to plead guilty. At the time that the defendant entered his plea of guilty, however, there was no discussion of whether the agreed-upon sentence would run consecutively or concurrently with any outstanding sentence. . . . Therefore . . . it is clear that he had not, in fact, been fully informed of the consequences of his plea.'. . . . Thus, this court concluded that the plea was not made intelligently." (Citations omitted; emphasis in original.) In re Jason C., supra, 255 Conn. 573-74. Therefore, the standard announced in In re Jason C. did not establish a new principle of law and thus does not fall into the exception that would preclude its retroactive application to the present case.
Both the United States Supreme Court and the Connecticut Supreme Court apply a the following standard to cases, such as In re Jason C., in which "a decision of this Court merely has applied settled precedents to new CT Page 7829 and different factual situations. . . . In such cases, it has been a foregone conclusion that the rule of the later case applies in earlier cases, because the later decision has not in fact altered that rule in any material way." (Internal quotation marks omitted.) Yates v. Aiken,484 U.S. 211, 216 n. 3, 108 S.Ct. 534, 98 L.Ed.2d 546 (1988); and Statev. Marino, 190 Conn. 639. 654, 462 A.2 1021 (1983) (a case that "merely [applies] settled precedents to new and different factual situation . . . must be applied retroactively.").
The fact that the court was addressing the application of a well established rule and not a newly adopted constitutional doctrine also distinguishes the holding in In re Jason C. from the cases that the Department relies on for its argument that the decision cannot be applied retroactively, i.e., Consiglio v. Warden, 160 Conn. 151, 276 A.2d 773
(1970) and Dukes v. Warden, 161 Conn. 337, 288 A.2d 58 (1971), aff'd,406 U.S. 250, 92 S.Ct. 1551, 32 L.Ed.2d 45 (1972). In both of these cases, the court rejected the plaintiffs argument that he was entitled to relief because the trial court failed to follow the standard established by the United States Supreme Court in Boykin v. Alabama, 395 U.S. 238,242, 89 S.Ct. 1709, 23 L.Ed.2d 274 [1969], "which, in addition to reiterating the rule that a plea of guilty must be intelligent and voluntary, mandated the additional element that the record must affirmatively disclose that a defendant who pleaded guilty entered his plea understandingly and voluntarily." Consiglio v. Warden, supra,160 Conn. 162. The court determined that it was not required to resolve this issue because, in its opinion, "the Boykin rule has only prospective application. The pleas in the criminal case were entered February 3, 1959, more than ten years before the decision in the Boykin case, decided June 2, 1969. Although the United States Supreme Court has not passed on the question whether the Boykin case is retroactive . . . nevertheless, many courts in well-reasoned opinions have held that the Boykin case is not retroactive . . ." (Citations omitted.) Consiglio v. Warden, supra,160 Conn. 165-66.
The cases the court refers to in Consiglio v. Warden, in which courts determined that the rule announced in Boykin should not be applied retroactively, generally relied on Halliday v. United States, 394 U.S. 831,89 S.Ct. 1498, 23 L.Ed.2d 16 (1969).[5] In that case, the court held that the rule announced in McCarthy v. United States, 394 U.S. 459,89 S.Ct. 1166,22 L.Ed.2d 418 (1969), would not be applied retroactively.[6]
Although the court acknowledged that "in McCarthy we took care to note that our holding was based solely upon the application of Rule 11 [of the Federal Rules of Criminal Procedure] and not upon constitutional grounds . . . [n]evertheless, it is appropriate to analyze the question of that decision's retroactivity in terms of the same criteria we have employed to determine whether constitutionally grounded decisions that depart from CT Page 7830 precedent should be applied retroactively." Halliday v. United States, supra, 394 U.S. 832.[7] The court applied this rule and concluded that the factors thereof weighed against retroactive application of the new rule announced in McCarthy, Id., 833. Because the effect of the decision in Boykin v. Alabama was to make "Rule 11 of the Federal Rules of Criminal procedure as interpreted by McCarthy v. United States . . . applicable in state courts"; Ernst v. State, 43 Wis.2d 661, 170 N.W.2d 713,719 (1969); [and] "Halliday denied retroactivity to McCarthy v.United States . . . the Halliday determination governs Boykin." Flint v.Sharkey, 268 A.2d 714, 717 (R.I. 1970). Thus, in the cases the court relied on in Consiglio v. Warden, the courts based their decisions thatBoykin v. Alabama did not apply retroactively on the retroactivity standard that applies to "newly adopted constitutional rulings"; Hallidayv. United States, supra, 394 U.S. 833; and not on the presumption of retroactivity that governs when a ruling applies "settled precedents to new and different factual situations." State v. Marino, supra190 Conn. 654. Therefore, it is submitted that the standard announced inIn re Jason C. should be applied retroactively and governs this case.
The respondent also contends that the extension of his commitment should be vacated because at the hearing on the Department's petition for extension, the court violated his right to due process by not advising him of the rights he was giving up by agreeing to the extension.
The Department brought the petition pursuant to General Statutes §46b-141 (b), which provides: "The Commissioner of Children and Families may petition the court for an extension of the commitment [of children convicted as delinquent and committed for an indeterminate time up to a maximum of eighteen months] beyond the eighteen month period on the grounds that such extension is for the best interest of the child or the community. The court shall give notice to the parent or guardian and to the child at least fourteen days prior to the hearing upon such petition. The court may, after hearing and upon finding that such extension is in the best interest of the child or the community, continue the commitment for an additional period of not more than eighteen months."[8]
The General Statutes and the Practice Book do not specify that the court must advise a juvenile of the rights he or she will waive by agreeing to the extension, nor does it appear that the issue has been addressed in the case law. The Appellate Court has held, however, that the notice a juvenile is given regarding his or her extension hearing must comport with a juvenile's constitutional due process right to a fair hearing. In re Carlos Q., 62 Conn. App. 681, 772 A.2d 668 (2001). In that case, the court held that the trial court erred in denying a juvenile's motion to dismiss an extension petition on the ground that the department CT Page 7831 did not timely file the petition. Accordingly, the court reversed the trial court's judgment and remanded the case "with direction to render judgment dismissing the petition and ordering the respondent's release." Id., 690. The court premised its decision on its conclusion that, pursuant to General Statutes § 17a-10 (d), the Department is required to file a petition for extension at least thirty days prior to the date the original commitment is to expire and that the Department's failure to do so violated the statute and the juvenile's due process right to a fair hearing.
Section 17a-10 (d) provides, in relevant part: "Not more that sixty days nor less than thirty days prior to the expiration of the original commitment of any child to the department, the commissioner may petition the court for an extension of commitment pursuant to the provisions of section 46b-141. . . . ." The court determined that the statute "imposes mandatory time constraints with respect to the filing of such extensions and to the notice to be provided to and for the benefit of the juvenile." Id., 688. Moreover, the court noted that the issue of the juvenile's right to timely notice of an extension hearing implicates "the constitutional principle that the absence of timely notice violates a juvenile's due process rights to a fair hearing. . . . Fundamental tenets of due process . . . require that all persons directly concerned in the result of an adjudication be given reasonable notice and the opportunity to present their claims or defenses." (Internal quotation marks omitted.) Id.
In addition, courts have also recognized that juveniles have a right to due process in other hearings that arise subsequent to their adjudications as delinquent. In In re Steven M., 68 Conn. App. 427, 434,789 A.2d 1169, cert. granted, 260 Conn. 916, ___ A.2d ___; (2002), the Appellate Court held that before transferring a juvenile from one facility to another pursuant to General Statutes § 17a-12, in order "to comply with procedural due process, the court must first determine the competency of the juvenile. . . ." In State v. Israel S., Superior Court, judicial district of Waterbury (May 21, 2001, Dewey, J.) (30 Conn.L.Rptr. 90) the court held that the Department's promise to a juvenile that he would be committed to a particular facility implicated the juvenile's right to be made aware of value of the promise. "If the state reserved the right to transfer the defendant unilaterally, that understanding should have been placed on the record. Instead the state remained silent. This silence strongly implies that it shared the defendant's interpretation of the plea agreement." Id., 91.
Moreover, although our Supreme Court has noted that "the constitution does not mandate elimination of all differences in the treatment of juveniles [and criminal defendants];" In re Steven G., 210 Conn. 435, CT Page 7832 440, 556 A.2d 131 (1989); "we have held that certain basic constitutional protections enjoyed by adults accused of crimes also apply to juveniles." Id. Specifically, "[j]uveniles are constitutionally entitled to notice, sufficiently in advance of any hearing, of the specific issues that they must meet. They are also entitled to notification of their right to counsel, the right to cross-examine any witnesses against them, and to be informed regarding their privilege against self-incrimination. In reGault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1966)." In re StevenG., 14 Conn. App. 205, 209, 540 A.2d 107 (1988), aff'd, 210 Conn. 435,556 A.2d 131 (1989).
The following statues also indicate that the manner in which an extension hearing is conducted implicates a juvenile's right to due process. General Statutes § 46b-135 (a) provides: "At the commencement of any proceeding concerning the alleged delinquency of a child, the parent or parents or guardian and the child shall have the right to counsel and be so informed by the judge, and that if they are unable to afford counsel that counsel will be provided for them. Such counsel and such parent or parents or guardian or child shall have the rights of confrontation and cross-examination." General Statutes § 17a-16 (a) provides: "No child or youth placed or treated under the direction of the Commissioner of Children and Families shall be deprived of any personal, property or civil rights, except in accordance with due process of law." Therefore, respondent's motion to vacate his commitment should also be granted on the ground that he was not advised of the rights he waived by agreeing to the extension of his commitment.
Accordingly, the respondent's motion to vacate the extension of his commitment for an additional eighteen months is hereby GRANTED.
Patricia Lilly Harleston, J.